A.E. and R.R., individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Anthony MITCHELL, individually and in his capacity as Executive Director of the Utah Department of Social Services, Wilfred Higashi, individually and in his capacity as Director of the Utah Division of Mental Health; Eugene Bliss and Elizabeth Hirsh, individually and in their capacities as staff psychiatrists of the University of Utah Medical Center; Norman Anderson, individually and in his capacity as Clinical Director of the Granite Mental Health Center; and Joy Ely, individually and in her capacity as staff psychiatrist of the Granite Mental Health Center, Defendants-Appellees.

No. 81–2514.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1983.

Bruce Plenk of Utah Legal Services, Inc., Salt Lake City, Utah, for plaintiffs-appellants.

Patricia J. Marlowe, Deputy County Atty., Salt Lake City, Utah (Ted Cannon, Salt Lake County Atty., Salt Lake City, Utah, with her on the brief), for Salt Lake County defendants-appellees.

William T. Evans, Asst. Atty. Gen., Salt Lake City, Utah (David L. Wilkinson, Atty. Gen., Sharon Peacock, Asst. Atty. Gen., Salt Lake City, Utah, with him on the brief), for State of Utah defendants-appellees.

Before HOLLOWAY and SEYMOUR,

Circuit Judges, and BOHANON,* District Judge.

SEYMOUR, Circuit Judge.

Plaintiffs were involuntarily hospitalized in mental health institutions in Utah, and subjected to medication against their will. Defendants are among those responsible, directly or indirectly, for the treatment programs at two of Utah's mental health facilities. On behalf of a class of similarly situated mental patients, plaintiffs sought to enjoin defendants from medicating them against their will absent a prior hearing to establish their incompetence to give consent, and to have the Utah statute authorizing such treatment declared unconstitutional, see Utah Code Ann. § 64–7–47 (1953 & Supp.1983). Specifically, plaintiffs framed their contention as follows:

> "Because Utah law authorizes the involuntary hospitalization of mentally ill persons without findings that they are incompetent to consent to medication and that no less intrusive treatment exists, a separate determination must be made as to whether involuntary medication of all involuntarily hospitalized persons is warranted."

Rec., vol. I, at 82. Plaintiffs also sought damages under 42 U.S.C. § 1983 (1976) for prior unconstitutional treatment.

After the institution of the lawsuit, the Utah legislature amended the statute under which plaintiffs had been involuntarily hospitalized, Utah Code Ann. § 64–7–36 (1953) (amended 1979). The district court thereafter granted summary judgment to defendants on the injunctive and declaratory claims, holding that the amended section 64–7–36, when considered in conjunction with section 64–7–47, ensures adequate due process before persons like plaintiffs are involuntarily medicated. The court thereupon decertified the class. In a subsequent judgment, the court denied plaintiffs damages under 42 U.S.C. § 1983, finding that the constitutional law with respect to medication of mental health patients was unsettled at the time of the alleged violations and that defendants were entitled as a matter of law to a good faith immunity defense.

■ On appeal, plaintiffs do not contend the district court erred in holding that the new involuntary commitment statute granted plaintiffs their requested relief. Instead they point out that they offered evidence the statute is not being applied as construed by the court. They assert that they should have been permitted to amend their complaint to make this argument.[1]

For the following reasons, we affirm the district court.

## I.

After a hearing on February 17, 1978, pursuant to the Utah statute in effect at the time, Utah Code Ann. § 64–7–36 (1953), the District Court for Salt Lake County ordered plaintiff A.E. hospitalized for sixty days at the University of Utah Medical Center. During A.E.'s hospitalization, de-

---

\* The Honorable Luther L. Bohanon, Senior District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. In their brief on appeal, plaintiffs also contended that the district court erred in finding against them on the damages issue. Subsequently, the Supreme Court rendered its decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court held that an official need no longer prove both subjective and objective good faith in order to establish a defense of qualified immunity in a section 1983 damage action. Government officials are now "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. *Accord Miller v. City of Mission,* 705 F.2d 368, 375 n. 6 (10th Cir.1983); *Coleman v. Turpen,* 697 F.2d 1341, 1344 (10th Cir.1983). In light of *Harlow* and the district court's conclusion that the law is unsettled in this area, plaintiffs conceded at oral argument that summary judgment was proper on the good faith immunity issue. Although the district court granted summary judgment in favor of defendants Anderson and Higashi on other grounds, we need not address those grounds because both of these defendants raised good faith immunity as an affirmative defense below. Under the circumstances, we believe it appropriate to affirm dismissal of the damage claims against all defendants on the basis of *Harlow.*

fendant doctors Bliss and Hirsh prescribed a number of so-called "psychotropic" drugs for her, including Haldol, Lithium, and Prolixin,[2] despite her continuing objections to these treatments. A.E. alleges a number of ill effects as a result of these medications, including depression and a loss of control over her physical functions. She also claims that these treatments disabled her from nursing her infant son.

The State hospitalized plaintiff R.R. on October 13, 1978. The court ordered him assigned, for an indeterminate period, to Granite Mental Health Center under the treatment of defendant doctor Joy Ely. Although R.R. refused consent, Ely prescribed injections of Prolixin. R.R. alleges serious adverse physical effects from the treatments, including tremors, decreased mobility, and blurred vision.

Neither plaintiff was declared incompetent to give informed consent to treatment before being involuntarily medicated, and no hearing was held to determine whether any less restrictive alternative treatment existed. Under the statutory scheme then in effect, no such hearing was required. A physician could prescribe medication for involuntarily hospitalized patients if it was "determined by [the] physician to be required by the patient's *medical needs.*" Utah Code Ann. § 64–7–47 (1953) (emphasis added).

Plaintiffs filed this class action in December 1978. In a separate case decided February 16, 1979, the United States District Court for the District of Utah struck down, as both overly broad and impermissibly vague, the Utah statute under which plaintiffs had been ordered involuntarily hospitalized, Utah Code Ann. § 64–7–36 (1953). *See Colyar v. Third Judicial District Court,* 469 F.Supp. 424 (D.Utah 1979). In *Colyar,* Judge Anderson, who was also the trial judge in the present case, summarized as follows his holding on the requirements of a constitutionally permissible involuntarily commitment statute:

"The committing authority must find, as a threshold requirement, that the proposed patient is incapable of making a rational treatment decision. The purpose of this requirement is to require the committing court to 'distinguish between those persons whose decisions to refuse treatment must be accepted as final from those whose choices may be validly overridden through parens patriae commitment.' ... The statutory language employed to give effect to this criteria must, then, focus on the individual's ability to engage in a decision-making *process;* his ability to weigh the costs and benefits of commitment or treatment. The statute must leave room for the individual who would rather remain free of therapeutic intervention even though that freedom is obtained at the price of diminished functional capacity. Thus, prior to committing a person, the court must find that the proposed patient is unable to assess the possible benefits of treatment and to understand the hazards and risks to health involved in his decision to forego treatment."

*Id.* at 434 (emphasis in original).

Shortly after *Colyar,* the Utah Legislature amended section 64–7–36 to comply with the decision. Judge Anderson agreed with defendants that this amendment provided plaintiffs with "the protection to which they are entitled," and granted partial summary judgment denying plaintiffs' declaratory and injunctive claims. Rec., vol. II, at 441.

The parties subsequently entered into a stipulation setting out time limitations for resolving the remaining damage issues. When defendants moved to dismiss the damage claims, plaintiffs responded with two pleadings that did not address the damage issue but instead set forth renewed

---

**2.** Psychotropic drugs, broadly defined, are those drugs "having an altering effect on the mind." Webster's New World Dictionary 1148 (2d ed. 1980). Alternatively referred to as "antipsychotic drugs" or "major tranquilizers," *Mills v. Rogers,* 457 U.S. 291, 293 n. 1, 102 S.Ct. 2442, 2445 n. 1, 73 L.Ed.2d 16 (1982), they are used in treating psychoses, especially schizophrenia. *See Rogers v. Okin,* 478 F.Supp. 1342, 1359–60 (D.Mass.1979), *aff'd in part and rev'd in part,* 634 F.2d 650 (1st Cir.1980), *vacated and remanded sub nom. Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982).

claims for declaratory and injunctive relief on the basis of new allegations. Thereafter plaintiffs moved to amend their complaint for what would have been the fourth time in the lawsuit. In their amended complaint, plaintiffs claimed that the amended Utah commitment statute was being *applied* to newly committed patients in a manner not contemplated by the district court when it denied injunctive relief. Plaintiffs' proposed amendment would have added new plaintiffs and new defendants, as well as this new issue. The district court denied leave to amend and struck the earlier two pleadings that sought to interject this same new issue into the lawsuit. Plaintiffs appeal these adverse orders.

## II.

Plaintiffs originally sued for a declaratory judgment that Utah Code Ann. § 64–7–47 violates the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution insofar as it authorizes forcible injection of mind controlling drugs into mental health patients without due process. They also asked for an injunction against such practices. Plaintiffs claimed that absent an emergency, mental patients may not be forcibly medicated without a prior judicial determination of incompetency to consent to such medication, and a determination that the proposed medication is the least restrictive alternative form of treatment.

As we have noted, the Utah legislature amended its involuntary hospitalization statute after plaintiffs instituted this action. As a result, a Utah court may now order hospitalization only if, upon a hearing and consideration of the record, it finds by clear and convincing evidence that

"(a) The proposed patient has a mental illness; and

(b) Because of the patient's illness the proposed patient poses an immediate danger of physical injury to others or self, which may include the inability to provide the basic necessities of life, such as food, clothing, and shelter, if allowed to remain at liberty; and

(c) *The patient lacks the ability to engage in a rational decision-making proc-*

*ess regarding the acceptance of mental treatment as demonstrated by evidence of inability to weigh the possible costs and benefits of treatment;* and

(d) *There is no appropriate less restrictive alternative to a court order of hospitalization;* and

(e) The hospital or mental health facility in which the individual is to be hospitalized pursuant to this act can provide the individual with treatment that is adequate and appropriate to the individual's conditions and needs. In the absence of the required findings of the court after the hearing, the court shall forthwith dismiss the proceedings."

Utah Code Ann. § 64–7–36(10) (Supp.1983) (emphasis added).

In granting partial summary judgment based on the amended legislation, the district court held:

"The court feels that plaintiffs have misconstrued the full import of § 64–7–36(10)(c) above. That subsection requires that before a patient is hospitalized and, *a fortiori,* treated, that a court find beyond a reasonable doubt that the patient 'lacks the ability to engage in a rational decision-making process regarding the acceptance of mental treatment....' This finding would be based on 'evidence of inability to weigh the possible costs and benefits of treatment....' *If a court has made that finding, it follows that the patient is incompetent to consent to a proposed medication since if he is incompetent to consent to treatment in general he would be no more competent to consent to a specific treatment.* The court does not believe that competence must be evaluated anew each time a proposed treatment is utilized."

Rec., vol. II, at 438 (emphasis added). With respect to alternative treatment, the court said:

"Only those who are incompetent to consent to treatment can be committed under the statute. *Utah Code Ann. § 64–7–36(10)(c).* Furthermore, only those for whom there is 'no appropriate less restrictive alternative to a court order of hospitalization' can be committed under the

statute. *Id.* § 64–7–36(10)(d). It is reasonable to assume that under the terms of the new statute much evidence will be presented during commitment proceedings with regard to potential treatments which would be administered in the hospital. Similarly, in making a finding of no appropriate less restrictive alternative to hospitalization, it is reasonable to assume that the court would weigh the various alternative treatments available upon hospitalization and the appropriateness of those treatments. These factors would weigh heavily in the court's findings.

*Id.* at 440.

As grounds for reversing the denial of injunctive and declaratory relief, plaintiffs do not argue that the district court erred *as a matter of law* in holding that section 64–7–47, in conjunction with section 64–7–36, facially affords plaintiffs the procedural due process required by the Constitution. Thus, we need not address the constitutional issue. Plaintiffs argue instead that Judge Anderson was *in fact* wrong about what the state courts require to be shown in a section 64–7–36 hearing.

With respect to the argument they do raise, plaintiffs rely on the materials they offered in moving for a new partial summary judgment eight months after Judge Anderson's order. They there asserted that "§ 64–7–36(10) (1979) *is not being implemented* to provide the declaratory and injunctive relief that Plaintiffs have claimed." Rec., vol. III, at 473–74 (emphasis added). In support of this motion, plaintiffs provided the court with nothing more than an article on the right to refuse antipsychotic medications, and affidavits from two appointed counsel for proposed patients at civil commitment hearings in Salt Lake County. The affiants stated that, in their personal experience, hearings under section 64–7–36 do not in general provide persons with the procedural safeguards that Judge Anderson required in his order. These assertions raised a new claim not previously in the lawsuit. Consequently, we must determine whether the district court properly struck these pleadings from the record and correctly denied plaintiffs' motion to amend its complaint to raise this new allegation.

■ Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend his pleading by leave of court, and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). We have said, however, "[a]dmittedly leave to amend is to be given freely, but this does not mean that it can go on indefinitely." *DeBry v. Transamerica Corp.,* 601 F.2d 480, 492 (10th Cir.1979).

In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court said:

"In the absence of any apparent or declared reason—such as undue delay . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment . . ., etc.—the leave sought should, as the rules require, be 'freely given.'"

*Id.* at 182, 83 S.Ct. at 230. The instant case presents all these reasons for refusing leave to amend. The district court filed its order denying plaintiffs' claims for declaratory and injunctive relief in June 1980, after plaintiffs already had amended their complaint three times. Not until May 1981 did plaintiffs seek leave to amend their complaint a fourth time. This amendment did not attempt merely to "refine" the original pleadings. *See R.E.B., Inc. v. Ralston Purina Co.,* 525 F.2d 749, 752 (10th Cir.1975). Rather, the fourth amended complaint would have added a new cause of action, new plaintiffs, and new defendants based on events that had occurred a month prior to the June 1980 order.[3] At no time before the proposed amendment did plaintiffs ever make a motion to set aside or reconsider the June 1980 order entered almost a year earlier.

If the district court had permitted plaintiffs' fourth amendment, defendants would have had to defend an almost entirely new case. Under these circumstances, the district court acted within its discretion in denying plaintiffs' motion to amend. *See*

---

**3.** By early 1979, both named plaintiffs had been released from confinement. The class, as it

*Zenith Radio Corp. v. Hazeltime Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Polin v. Dun & Bradstreet, Inc.,* 511 F.2d 875, 877 (10th Cir. 1975); *Whelan v. New Mexico Western Oil & Gas Co.,* 226 F.2d 156, 161 (10th Cir.1955). *See also Pharo v. Smith,* 621 F.2d 656, 664 (5th Cir.1980) (judge entirely within discretion in denying plaintiff's motion for leave to amend where motion filed nine months after defendant granted summary judgment). For the same reasons, the court correctly ordered stricken the other pleadings attempting to raise this new issue, *see* Fed.R.Civ.P. 12(f), and properly dismissed this action.

AFFIRMED.

was originally defined, consisted of "all persons in Utah who have been admitted to a mental health facility pursuant to a court order, without a finding that they are incompetent or dangerous, but who are subject to medication against their will, solely upon a determination of medical need, and without an opportunity for a prior hearing to determine their competency to consent to medication and to determine whether a constitutional standard for involuntary medication has been met." Rec., vol. I, at 5. In the proposed fourth amended complaint, plaintiffs sought to add a new class of plaintiffs who were involuntarily committed under the amended statute.