**Daniel Howard BEE, Plaintiff,**

v.

**Dr. Keith GREAVES, et al.,
Defendants.**

**Civ. No. C80–0697G.**

United States District Court,
D. Utah, C.D.

Sept. 3, 1987.

Brian M. Barnard, C. Dane Nolan, Salt Lake City, Utah, for plaintiff.

Patricia J. Marlowe, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

**J. THOMAS GREENE, District Judge.**

This matter came on for hearing on July 7, 1987, on motions by plaintiff to tax attorney fees and costs, motion by all defendants except defendant Dr. Robert Greer to tax costs, motion by all defendants except defendant Dr. Greer and defendant Keith Hughes to tax attorney fees and costs and motion by Dr. Greer to stay judgment and set amount for a supersedeas bond. Plaintiff was represented by Brian M. Barnard and C. Dane Nolan and defendants were represented by Patricia J. Marlowe. Plaintiff and defendants submitted extensive memorandums of law, affidavits and exhibits. The court heard oral argument, after which the court stayed judgment pending appeal and set bond for the amount of the judgment. The court took the motions relating to attorney fees and costs under advisement. The court is now fully advised and sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

On November 26, 1980, plaintiff filed a pro se complaint in this case. On April 13, 1981, plaintiff's counsel, Brian M. Barnard, made an appearance of counsel on plaintiff's behalf. Thereafter a hearing was held and plaintiff's counsel was granted permission to file an amended complaint which was filed on May 14, 1981. The amended complaint named the following defendants: Salt Lake County ("County") as owner and operator of the Salt Lake County Jail ("Jail"); Darrell Brady ("Brady") as commanding officer of the Jail; N.D. "Pete" Hayward as Sheriff of Salt Lake County; William Dunn ("Dunn"), William Hutchison ("Hutchison"), Michael Stewart ("Stewart"), Bart Barker ("Barker") and Robert Salter ("Salter") as Salt Lake County Commissioners; Grant English ("English") as director of operations at the Jail; Roger Jones ("Jones") as director of security at the Jail; Lieutenant N. Bruce Eagan ("Eagan"), Lieutenant Bill A. Van-Wagneer ("VanWagneer") and Sergeant Ken Mills ("Mills"); Steve Huntsman ("Huntsman") and Bud Eagan ("B. Eagan") as directors of the Jail; Dr. Keith Greaves ("Greaves") as a physician at the Jail; Keith Hughes as a medical attendant employed by the Jail; Granite Mental Health ("GMH") as a governmental entity providing health services to the jail; Dr. Robert Greer ("Greer") as an employee of GMH; and John Does I, II and III.

Plaintiff asserted essentially two separate claims in the amended complaint with both claims allegedly giving rise to violation of plaintiff's right to due process of law and his right to be free from cruel and unusual punishment. The factual situation relating to the first claim was that on August 28, 1980, plaintiff was taken from the Jail and sent to the Provo State Hospital for a medical examination to determine his mental state. Upon plaintiff's return to the jail he was suspected of having contracted a venereal disease while at the hospital. As a result, plaintiff was placed in a "double lock behavior modification cell," which is described as solitary confinement, even though plaintiff had not violated any jail regulations. The factual allegations with regard to plaintiff's second claim were that while incarcerated as a pre-trial detainee in the Jail, plaintiff was force medicated with the drug thorazine.

The procedural history in this case began on December 29, 1981, when after some initial discovery, defendants filed a motion for summary judgment. On December 31, 1981, plaintiff filed his own motion for partial summary judgment. On January 12, 1982, the parties stipulated to dismissal of defendants B. Eagan, Huntsman, Miles, VanWageneer, English and Eagan. On February 11, 1982, Judge Anderson of this court heard argument and granted defend-

ants' motion for summary judgment. Shortly thereafter an appeal was filed by plaintiff. However, sometime after the notice of appeal was filed plaintiff apparently abandoned his claim relating to his placement in a double lock behavior modification cell and only pursued his claim of forced medication. On October 12, 1984, the Tenth Circuit reversed the grant of summary judgment as to plaintiff's forced medication claim. *Bee v. Greaves*, 744 F.2d 1387 (10th Cir.1984). The Tenth Circuit held that a pre-trial detainee has a constitutionally protected liberty interest in making his or her own decision whether to accept or reject the administration of potentially dangerous drugs. *Id.* at 1392–93. The court remanded the case to this court to make factual determinations, including whether an emergency existed, and if an emergency did exist whether the response of defendants to that emergency was an exaggerated response. *Id.* at 1396–97.

On October 5, 1985, defendants filed a motion for summary judgment, and on November 20, 1985, plaintiff filed a motion for partial summary judgment. Thereafter the case was reassigned to this judge and on December 17, 1985, this court heard argument and provisionally denied both motions. On January 15, 1986, additional arguments on the cross motions of the parties were heard, and by order dated February 19, 1986, this court ruled that the law relative to forced medication of pre-trial detainees was clearly established in 1980. On February 21, 1986, defendants filed a notice of appeal from that ruling and shortly thereafter plaintiff filed a motion with the Tenth Circuit for summary affirmance and/or dismissal of the appeal. On November 4, 1986 the Tenth Circuit granted plaintiff's motion for dismissal on the ground that the order of this court was not an appealable order. On April 3, 1987, pursuant to plaintiff's motion to dismiss made in open court, the complaint as against defendants Barker and Stewart was dismissed. On April 7, 1987, pursuant to a similar motion by plaintiff the com-

plaint as against defendants Salter, Dunn and Hutchison was also dismissed.

On April 7–9 and on April 13, 1987, a jury trial was held. On April 9, 1987, the plaintiff completed his evidence and at that point defendants moved for a directed verdict. On April 13, 1987, the court granted a directed verdict with regard to defendants Hayward and Brady. At approximately 12:05 a.m. on April 14, 1987, a jury verdict was returned with regard to the remaining five defendants. The jury found no cause of action against defendants Salt Lake County, Jones, Greaves and Hughes. The jury rendered a verdict in favor of plaintiff against defendant Dr. Greer and awarded general damages in the amount of one hundred dollars ($100) and punitive damages in the amount of three hundred dollars ($300). Thereafter, motions for judgment notwithstanding the verdict were filed and denied, and on June 23, 1987, defendant Dr. Greer filed a notice of appeal.[1]

## LEGAL ANALYSIS

■ The initial issue that must be determined is whether plaintiff is a prevailing party for purposes of 42 U.S.C. § 1988. The standard is whether the plaintiff has "succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)); *see also In re Kansas Congress Dist. Reapportionment Cases*, 745 F.2d 610, 612 (10th Cir.1984). The jury determination as against defendant Dr. Greer clearly establishes plaintiff as a prevailing party. Once that determination is made the plaintiff ordinarily is entitled to an award of attorney's fees unless special circumstances would render it unjust. *Corbitt v. Andersen*, 778 F.2d 1471, 1475 (10th Cir.1985).

■ The beginning point in calculating the amount of statutorily awardable fees is to multiply the number of hours reasonably

---

1. Despite the notice of appeal this court retains jurisdiction to determine the propriety and

amount of attorney's fees. *Garcia v. Burlington Northern R.R.*, 818 F.2d 713, 721 (10th Cir.1987).

expended on the litigation times a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Clayton v. Thurman*, 775 F.2d 1096, 1098 (10th Cir.1985). In submitting a *reasonable* fee application it is the responsibility of plaintiff's counsel to exclude hours which are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. Once the court has reviewed the reasonableness of the number of hours and of the hourly rate, the court must determine whether the plaintiff has achieved only partial or limited success. *Id.* at 434–40, 103 S.Ct. 1940–43. In analyzing "success," as applied to the present case, the amount of the potentially awardable fee should be balanced against the results obtained but subject to reduction of the award by: (1) elimination of separate time and effort in pursuing unrelated claims upon which the plaintiff was unsuccessful; and (2) elimination of the time and effort in pursuing interrelated, nonfrivolous claims but as to which the plaintiff achieved only limited success. *Id.* at 436, 103 S.Ct. at 1941. The court has discretion to consider other factors which could decrease or increase a fee award depending upon the facts and circumstances present-

ed.[2] As to this case, the court has reduced the required fee to be awarded substantially by consideration of the time, rate, separate claims and level of success.

### 1. *Reasonable Time*

■ Plaintiff's counsel has submitted application for an award of a total of 865.92 hours spent by attorneys, law clerks and paralegals in working on this case. The total hours and requested rate are set forth in footnote.[3] Plaintiff's counsel represents in his affidavit that the total of 865.92 hours does not include 50 hours of work considered to be excessive, redundant or otherwise unnecessary. The Tenth Circuit has acknowledged that plaintiff's counsel must distinguish " 'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.1983). After careful review of the hours set forth in the fee application this court determines that further reductions should be made. Defendant Dr. Greer properly points out that the total hours expended by BMB should be reduced by 10.2 hours for time spent drafting a second amended complaint that was never filed. Dr. Greer also points out that 3 hours of clerk time and 7.5 hours of lawyer time should be subtracted from the time of DJM for time spent at hearings at which she did not participate. *See Ra-*

**2.** For instance, it is often important to analyze and exclude duplication of time spent on aspects of a case where several lawyers, paraprofessionals and/or clerks are working simultaneously. Also, the court may increase the rate under certain circumstances, such as where the success achieved is exceptional, the plaintiff's lawyers have performed brilliantly, the lawyer is properly paid on a contingent fee basis, or when the lawyer has accepted a particularly undesirable case. *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir.1983).

**3.**

|  | hours | | rate | | total |
|---|---|---|---|---|---|
| BMB (lawyer) | 611.72 | × | $175 | = | $107,051.00 |
| CDN (lawyer) | 95.30 | × | $ 80 | = | 7,624.00 |
| DJM (lawyer) | 14.60 | × | $ 80 | = | 1,168.00 |
| BP (lawyer) | 7.30 | × | $ 90 | = | 657.00 |
| LRJ (law clerk) | 46.40 | × | $ 40 | = | 1,856.00 |
| DJM (law clerk) | 42.25 | × | $ 40 | = | 1,690.00 |
| KJ (law clerk) | 28.35 | × | $ 40 | = | 1,134.00 |
| BG (law clerk) | 8.55 | × | $ 40 | = | 342.00 |
| AL (law clerk) | .60 | × | $ 40 | = | 24.00 |
| SS (law clerk) | .55 | × | $ 40 | = | 22.00 |
| CCN–CCH (paralegal) | 9.90 | × | $ 40 | = | 396.00 |
| VAG (paralegal) | .40 | × | $ 40 | = | 16.00 |
| | 865.92 | | | | $121,980.00 |

The court notes three discrepancies between the above figures and those submitted by plaintiffs' counsel. In the second affidavit of plaintiff's counsel the wrong rate is applied to 9.3 hours attributed to CDN. Plaintiff's counsel acknowledged that mistake at oral argument. With regard to the first affidavit of plaintiff's counsel there is a $19 shortfall in the figure submitted by plaintiff based upon the hours outlined. This court has relied on the number of hours submitted in creating the above table of figures. The third discrepancy is that the rate for BP in the fee application is $75 per hour but the rate requested by affidavit is $90 per hour. Accordingly, the $90 per hour rate is regarded as the intended rate.

This court will make use of the initials used in the fee application throughout this opinion.

*mos,* 713 F.2d at 554 n. 4.[4]  The fees sought should also be reduced to eliminate time spent filing or delivering documents to the court or opposing counsel;[5] and time spent retrieving documents from court records.[6]  Such time expenditure is generally absorbed as part of overhead expenses incorporated into the fee rate not normally charged for separately.  *See Ramos,* 713 F.2d at 559.  Time spent "digesting depositions," although undisputably necessary to bring personnel up to speed, is not within the category of "hard billables" and should be excluded.[7]  Plaintiff's counsel has spent more than 64 hours on the issue of fees itself, totalling more than $7,000.  That figure seems excessive given the acknowledged experience of counsel in civil rights cases and counsel's representation that contemporaneous records have been kept.[8]

■ This court must evaluate the overall fee application in light of the nature of the case and issues presented.  The court must also take into account any duplication of effort evidenced in the application.[9]  This case presents a relatively simple factual situation although the legal issues are of import.[10]  In view of the foregoing, and upon review of the submissions, this court

considers 15% or 91.76 of the total hours spent by BMB in pursuit of the litigation to be excessive.  Accordingly, those hours should be eliminated.

### 2. *Reasonable Rates*

■ The determination of an appropriate hourly rate is based upon what lawyers of comparable skill and experience who practice within the area of this litigation would charge.  *Ramos,* 713 F.2d at 555.  Plaintiff's counsel has submitted the affidavits of five practicing lawyers engaged in complex civil litigation before this court in support of a rate of $175 per hour.  Those affidavits present a rate range of $120–$150 per hour as the minimum hourly fee for a lawyer with the advanced trial experience of BMB, and set forth the opinion that a fee of $175 per hour is within a reasonable range.  Defendant Dr. Greer has filed the affidavit of a lawyer who is often engaged in the defense of civil rights suits in which the norm for fees is asserted to be between $95–$105 per hour for someone with BMB's advanced experience.  This court fixes the rate of BMB at $125.00 per hour, and finds that figure to constitute a reasonable rate.[11]

---

**4.** The dates of those hearings are January 19, 1982, February 11, 1982, July 30, 1983 and August 1, 1983.  Dr. Greer would also like to exclude 22.15 hours of lawyer time spent by CDN at the trial.  In *Ramos* the Tenth Circuit stated that ordinarily the presence of more than *two* lawyers at trial, or more than *one* lawyer at hearings must be justified to the court.  713 F.2d at 554 n. 4.  However, CDN was only the second lawyer at trial.  It is not unusual to have lead counsel assisted by co-counsel and therefore even though he may not have "participated" by asking questions of witnesses, his contribution to the plaintiff's case seems readily justifiable.

**5.** 3.2 hours by CCN–CCH, .40 of an hour by VAG, and .20 of an hour by BMB.

**6.** 1.20 hours by LJR, and .50 of an hour by BMB.

**7.** The hours of KJ reflect 12 hours spent digesting depositions.

**8.** Although any such an award may be questionable in other type cases, it is well recognized that time spent preparing a fee application may be sought under 42 U.S.C. § 1988 in furtherance

of the policy behind Section 1988 which is to encourage attorneys to represent indigent clients and to act as private attorneys general in vindicating federal civil rights.  *Hernandez v. George,* 793 F.2d 264, 269 (10th Cir.1986).  Nevertheless such expenditures must be reasonable.

**9.** *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir. 1983).

**10.** In fairness to plaintiff's counsel, this court is aware that the case was appealed to the Tenth Circuit twice, that plaintiff prevailed on the first appeal and that on the second appeal plaintiff's motion to dismiss was granted.  Ordinarily, a plaintiff who successfully defends a judgment on appeal is entitled to attorney fees and costs on appeal.  *Garcia v. Salt Lake County,* 768 F.2d 303, 310–11 (10th Cir.1985).

**11.** The finding is close to the range of rates set forth in the affidavits presented by both parties.  The midpoint between plaintiff's figures ($147.50 per hour based upon the median between 120–175) and defendants' figures ($100 per hour based upon the median between $95–105) is $123.75.

One critical factor which has influenced the court in setting the rate is that over seventy-two percent of the total time for all attorneys, clerks and paralegals was spent by BMB. Although BMB's experience and expertise undoubtedly benefited plaintiff, the necessary result of such a high percentage is that BMB performed work that could have been performed by less qualified personnel. This court is of the opinion that the affidavits submitted on behalf of plaintiff's counsel do not take that factor into account.

This court concludes that the rates of CDN and DJM should likewise be reduced from $80 per hour to $60 per hour. Both lawyers were within their first year of practice when they provided service in this case. No affidavits have been provided to support the $80 per hour rate except a representation by the lawyers themselves. This court considers a rate of $60 per hour to be reasonable for first year practitioners. This court considers the rate of $90 per hour for the services of BP to be reasonable based upon his experience and expertise [12] and that a rate of $40 per hour for law clerk time and paralegal time is reasonable.

### 3. Separate Unrelated Claims

In *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) the Supreme Court stated:

> The Congressional intent to limit awards to prevailing parties requires that ... unrelated claims [upon which the plaintiff did not prevail] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

Whether a claim is related to the claim upon which the plaintiff prevailed is determined by viewing whether the claim "involves a common core of facts or [is] based on related legal theories." *Id.* In this case plaintiff's claim of forced medication and his claim of punitive segregation to "solitary confinement" are not based on the same facts. Although both claims general-

ly challenge the treatment of plaintiff while in confinement, the claims nevertheless arise out of two distinct factual episodes. As to both claims plaintiff generally asserted violation of due process of law and the right to be free from cruel and unusual punishment. However, the legal principles applicable to assertion by a pretrial detainee of a liberty interest to be free from forced medication are unique and distinct from the legal issues applicable to punitive administrative segregation. Because counsel has not clearly described by issue the research and other activities undertaken, it is difficult to divide counsel's time between the two claims. Accordingly, this court instead will focus on the overall relief obtained in relation to the hours reasonably expended.

### 4. Level of Success

In *Hensley* the Supreme Court determined that a fee award may be reduced to account for claims upon which the plaintiff did not prevail even though the claims are nonfrivolous and raised in good faith and are interrelated to the claims upon which the plaintiff did prevail. 461 U.S. at 436, 103 S.Ct. at 1941. In reducing an award for only partial success the Court expressly rejected a mathematical approach whereby the total issues are compared to the issues prevailed upon and acknowledged that the district court is granted great discretion "to identify specific hours that should be eliminated, or simply reduce the award to account for the limited success." *Id.* at 435–37, 103 S.Ct. at 1940–41. Also, the Tenth Circuit has made it clear that a mathematical formula based upon the amount of monetary recovery compared to the fees sought is not an appropriate model, although it is clear the district court should consider the relationship between the amount of the fee to be awarded and the results obtained. *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir.1983).

In focusing upon the results obtained in this case, it is helpful but not dispositive to review the procedural history. Plaintiff's

---

**12.** *See March For The Americas Committee v. Stoler*, No. 84–C–452W (D.Utah Nov. 20, 1985) (unpublished decision in which BP was awarded $90 per hour under 42 U.S.C. § 1988).

amended complaint named nineteen defendants. Only one ultimately was found to be liable. Six of the defendants voluntarily were dismissed seven and one-half months after the amended complaint was filed. Five more defendants were dismissed on motions by plaintiffs just prior to trial. Two additional defendants were granted a directed verdict at the close of plaintiff's evidence. Finally, with regard to four of the five remaining defendants, the jury found against plaintiff and in favor of the defendants.

The procedural history can also be analyzed by claims and issues rather than by defendants. Plaintiff was clearly unsuccessful on his claim for punitive segregation from the prison population. Plaintiff also was unsuccessful with regard to the forced medication claim which went to trial in two important respects. First, plaintiff was unable to demonstrate an "affirmative link" between Dr. Greer and his supervisors at the Jail, since verdicts were not rendered against those individual defendants. Second, and most important, plaintiff was unable to establish liability on the part of Salt Lake County because the jury found that Dr. Greer did not act pursuant to a policy, custom or practice of the county when he ordered plaintiff to be force medicated.[13] Viewed in that light, the verdict demonstrates that the jury considered Dr. Greer's conduct to be isolated from the other defendants' conduct. Accordingly, the jury found culpability only in the conduct of one person, a physician who admitted that he knew the forced medication was probably unlawful. On the other hand, the successful aspect of plaintiff's case was in obtaining a ruling from the Tenth Circuit and this court that pre-trial detainees have a constitutionally guaranteed liberty interest not to be force medicated and that the law concerning that matter was clearly established in 1980. That represents a significant degree of success and is the basis for the fees awarded herein.

Based upon all of the above, this court considers that plaintiff's counsel ought to be awarded fifty percent of the reduced total amount of reasonable fees expended in this case. This court's determination of reduction is not based upon a precise formula but takes into account the facts and circumstances as well as the limited success of plaintiff in the overall litigation. The amount of such award is equal to $37,560.75.[14]

## II. Costs Requested by Plaintiff

■ Items that are not reimbursable under § 1988 are controlled by the general cost statute, 28 U.S.C. § 1920 and Fed.R. Civ.P. 54(d). See Ramos v. Lamm, 713 F.2d 546, 560 (10th Cir.1983). Rule 54(b) provides that "[e]xcept when express provision therefor is made either in a statute ... or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." The cost statute, § 1920, sets forth that a court "may tax as costs" six specifically enumerated items.[15] The Supreme Court has re-

---

**13.** The jury answered "No" to Question No. 2 of the Special Verdict:

> Did defendant Salt Lake County have any policy, custom, or practice regarding forced medication in non-emergency situations which caused plaintiff's constitutional rights to be violated?

**14.** Cf. footnote 3. The chart below reflects the total reasonable hours found by the court, multiplied by reasonable hourly rates, reduced by 50%.

| | hours | | rate | | total |
|---|---|---|---|---|---|
| BMB (lawyer) | 509.06 | × | $125 | = | $63,632.50 |
| CDN (lawyer) | 95.30 | × | $ 60 | = | 5,718.00 |
| DJM (lawyer) | 7.10 | × | $ 60 | = | 426.00 |
| BP (lawyer) | 7.30 | × | $ 90 | = | 657.00 |
| LRJ (law clerk) | 45.20 | × | $ 40 | = | 1,808.00 |
| DJM (law clerk) | 39.25 | × | $ 40 | = | 1,570.00 |
| KJ (law clerk) | 16.35 | × | $ 40 | = | 654.00 |

| | hours | | rate | | total |
|---|---|---|---|---|---|
| BG (law clerk) | 8.55 | × | $ 40 | = | 342.00 |
| AL (law clerk) | .60 | × | $ 40 | = | 24.00 |
| SS (law clerk) | .55 | × | $ 40 | = | 22.00 |
| CCN–CCH (paralegal) | 6.70 | × | $ 40 | = | 268.00 |
| | 742.72 | | | | $75,121.50 |

$75,121.50 × .50 = $37,560.75

**15.** The following items are listed in the statute at 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

cently interpreted the interplay between Rule 54(d) and § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* — U.S. —, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). In that case, the Court said:

> We think the better view is that § 1920 defines the term "costs" as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a

> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

16. In *Crawford* the court continued: "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of [28 U.S.C.] § 1821, absent contract or explicit statutory authority to the contrary." The district court in *Crawford* had determined that Rule 54(d) granted it discretion to exceed the $30–per–day witness fee limit found in 28 U.S.C. § 1821. In rejecting that argument the majority of the Supreme Court stated:

> Petitioners argue that since § 1920 lists which expenses a court "may" tax as costs, that section only authorizes taxation of certain items. In their view, § 1920 does not preclude taxation of costs above and beyond the items listed, and more particularly, amounts in excess of the § 1821 fee. Thus, the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920. We think, however, that no reasonable reading of these provisions together can lead to this conclusion, for petitioners' view renders § 1920 superfluous. If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920, which enumerates the costs that may be taxed, serves no role whatsoever.

In his dissenting opinion Justice Marshall, joined by Justice Brennan argued that the removal of discretion to tax as costs items not specifically listed in § 1920 is against the language and history of Rule 54(d) and § 1920 and the policy of making the prevailing party whole in light of the staggering costs of modern litigation.

17. Examples of items not embraced by § 1920 are the costs to transport plaintiff to trial and Randy Velarde's shirt. In addition even if this court were granted discretion to go beyond § 1920, courts have historically rejected taxation of the cost of long distance telephone calls,

federal court discretion to refuse to tax costs in favor of the prevailing party. *Id.* 107 S.Ct. at 2497.[16]

Applying the rule of the majority in *Crawford* this court has eliminated the "expenses" in plaintiff's application that are not specifically covered by 28 U.S.C. § 1920.[17] In addition, other expenses are not included because they are not described with sufficient detail to determine their necessity.[18] Accordingly, plaintiff is hereby awarded $1,463.58 as taxable costs.[19]

travel expenses and postage. *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2677 at 370–71 (1983).

18. Plaintiff has submitted a number of entries with only the word "copies" written beside the entry.

19. The costs and expenses requested by plaintiff total $3,475.67. The total costs awarded of $1,463.58 can be broken down into the following categories:

1. Copies of depositions reasonably necessary and deposition costs as authorized by 28 U.S.C. § 1920(2), (3) and (4). *See Ramos v. Lamm,* 713 F.2d 546, 560 (10th Cir.1983); 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 54.77[4] and 54–427 (1987).

| | | |
|---|---|---|
| 3/30/82 | – | $448.15 |
| 4/14/82 | – | 264.30 |
| 6/25/85 | – | 193.00 |
| 7/09/85 | – | 26.00 |
| | | $931.45 |

2. Witness fees as authorized by 28 U.S.C. § 1920(3) and 28 U.S.C. § 1821.

| | | |
|---|---|---|
| 10/27/81 | – | $ 30.00 |
| 4/07/87 | – | 30.00 |
| 5/14/87 | – | 30.00 |
| | | $ 90.00 |

3. Necessary transcription fees as authorized by 28 U.S.C. § 1920(2).

| | | |
|---|---|---|
| 3/27/86 | – | $ 61.00 |

4. Necessary copies as authorized by 28 U.S.C. § 1920(4).

| | | |
|---|---|---|
| 1/28/85 | – | $217.10 |
| 6/03/87 | – | 5.00 |
| 6/04/87 | – | 5.00 |
| | | $227.10 |

5. Printing costs as authorized by 28 U.S.C. § 1920(3).

| | | |
|---|---|---|
| 4/02/82 | – | $ 35.53 |
| 5/28/82 | – | 91.00 |
| | | $126.53 |

6. U.S. District Court transcript fee as authorized by 28 U.S.C. § 1920(1) and § 1914(b).

III. *Attorney Fees Requested by Defendant*

■ All of the defendants in this case except defendants Dr. Greer and Hughes have requested that they receive attorney fees as prevailing parties pursuant to 42 U.S.C. § 1988. In order to receive such an award defendants must demonstrate that the claims asserted against them were "frivolous, unreasonable, or groundless." *Vakas v. Rodriquez,* 728 F.2d 1293, 1297 (10th Cir.1984) (quoting *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). Both plaintiff and defendants have cited *Bennett v. Passic,* 545 F.2d 1260, 1264 (10th Cir.1976) wherein the Tenth Circuit defined a claim as frivolous if "no rationale argument on the law or the facts could be made in support of [such] claim...." The policy reason for such a high threshold in assessing fees against plaintiffs was recognized by the Supreme Court in *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978):

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a

party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–22, 98 S.Ct. at 700–01.[20] Upon review of the claims asserted against each of the defendants this court is of the opinion that plaintiff's claims were not "frivolous, unreasonable, or groundless" when asserted and such claims were not maintained after taking on such characteristics. With regard to the six defendants dismissed pursuant to the January 12, 1982 stipulation, those claims were not "frivolous, unreasonable or groundless" when first filed and counsel's willingness to stipulate to dismissal demonstrates good faith. This court is also unpersuaded with regard to arguments concerning defendants Salt Lake County, Jones and Greaves. This court denied a motion for directed verdict prior to submission of plaintiff's claims demonstrating that in the court's opinion those claims were not without merit. Even with regard to defendants Hayward and Brady who were granted a directed verdict at the close of plaintiff's evidence, only after all of plaintiff's evidence was presented at trial was it apparent that the case against those defendants should not be submitted to the jury. The most troubling claims asserted by defendants were those brought against defendants Barker, Stewart, Salter, Dunn and Hutchison as county commissioners. Those defendants were dismissed on plaintiff's own motion just prior to trial. Plaintiff's theory against those defendants was based upon a negligent or reckless failure to supervise the activities and policies undertaken at the Jail. In *Vakas v. Rodriquez,* 728 F.2d 1293 (10th Cir.1984) the Tenth Circuit declined to overrule the district court's determination that a claim was not frivolous or unfounded. The court said: "Although the plaintiff was confronted with substantial opposing authority, the areas of constitutional law which he sought to explore were not without some slight legal support." *Id.* at

3/01/82 — $ 27.50

TOTAL COSTS:
$1,463.58

**20.** The *Christianburg* case involved a claim under Title VII. However, the Supreme Court has

subsequently embraced the standard and rationale of *Christianburg* in determining fee awards under 42 U.S.C. § 1988. *Roadway Express Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *see also Weinrauch v. Park City,* 635 F.Supp. 91, 93 (D.Utah 1986)

1297. Based upon *Vakas* this court considers that plaintiff's theory of failure to supervise jail activities on the part of county commissioners is not a claim that ought to give rise to an award of fees under § 1988.

IV. *Costs Requested by Defendants*

All of the defendants in this case except Dr. Greer have requested their costs. However, since no documentation has been submitted as to what those costs are, they are denied.

Based upon the foregoing, plaintiff's motion to tax attorney fees is granted in the amount of $37,560.75, and plaintiff's motion to tax costs is granted in the amount of $1,463.58. The supersedeas bond of $400.00 set in this matter accordingly should be increased to total $39,424.33. Defendants' motion to tax attorney fees and costs is denied. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

(discussing the rationale of *Christianburg* in the   context of § 1988).