910 F.2d 686
 17 Fed.R.Serv.3d 260
 Daniel Howard BEE, Plaintiff-Appellee,
v.
Dr. Keith GREAVES and Medic Keith Hughes, Defendants,
and
Dr. Robert Greer, Defendant-Appellant.
Daniel Howard BEE, Plaintiff-Appellant,
v.
Dr. Keith GREAVES, Medic Keith Hughes, and Dr. Robert Greer,
Defendants-Appellees.
 Nos. 87-1928, 87-2503.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1990.
 
 Brian M. Barnard (C. Dane Nolan, with him on the brief), Salt Lake City, Utah, for plaintiff-appellant.
 Patricia J. Marlowe, Deputy County Atty. (David E. Yocom, Salt Lake County Atty., with her on the brief), Salt Lake City, Utah, for defendants-appellees.
 Before SEYMOUR, McWILLIAMS and EBEL, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 These appeals arise out of a suit brought by Daniel Howard Bee for damages under 42 U.S.C. Sec. 1983 (1982) based on his involuntary medication with thorazine while a pretrial detainee at the Salt Lake County jail. The district court originally granted summary judgment for all defendants. Bee appealed and we reversed and remanded. See Bee v. Greaves, 744 F.2d 1387 (10th Cir.1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985) (Bee I ). The only remaining defendant is Dr. Robert Greer, the jail psychiatrist, who ordered the drug forcibly administered to Bee when he refused to take it voluntarily.[1] After the jury returned a verdict against Dr. Greer on Bee's claim that the unwanted medication violated his constitutional rights, Bee sought and was granted an award of attorney's fees against Dr. Greer pursuant to 42 U.S.C. Sec. 1988 (1982). See Bee v. Greaves, 669 F.Supp. 372 (D. Utah 1987) (Bee II). Dr. Greer asserts in his appeal that he is entitled to qualified immunity because the law on the involuntary medication of persons such as Bee was not clearly established in 1980 when the events at issue took place. We disagree and affirm. Bee contends in his appeal that the district court abused its discretion in setting the amount of fees and costs. We affirm in part and reverse in part.
 
 I.
 
 2
 An official generally is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The unlawfulness must be apparent "in light of preexisting law." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 3
 "The particular action in question, however, need not have previously been held unlawful. Nor must there even be a strict factual correspondence between the cases establishing the law and the case at hand. Rather, this circuit requires only 'some but not precise factual correspondence.' It is incumbent upon government officials 'to relate established law to analogous factual settings.' "
 
 
 4
 Eastwood v. Department of Corrections, 846 F.2d 627, 630 (10th Cir.1988) (quoting Garcia v. Miera, 817 F.2d 650, 657 (10th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) (citations omitted).[2]
 
 
 5
 In denying Dr. Greer's pretrial motion for summary judgment on the basis of qualified immunity, the district court stated "that the law relative to forced medication of pretrial detainees was clearly established in 1980." Rec., vol. I, doc. 112 at 1. On appeal, Dr. Greer argues that the state of the law in 1980 was too uncertain to establish that Bee's right to refuse forced medication was constitutionally protected. We disagree.
 
 
 6
 The Supreme Court recently considered "whether a judicial hearing is required before the state may treat a mentally ill prisoner with antipsychotic drugs against his will." Washington v. Harper, --- U.S. ----, 110 S.Ct. 1028, 1032, 108 L.Ed.2d 178 (1990). In describing the substantive right at stake, the Court stated that it had "no doubt that ... respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." Id., 110 S.Ct. at 1036 (emphasis added). In support of this declaration, the Court cited its opinions in Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and Parham v. J.R., 442 U.S. 584, 600-01, 99 S.Ct. 2493, 2503-04, 61 L.Ed.2d 101 (1979), both of which predate Bee's involuntary medication.[3] If those cases established the law beyond doubt with respect to a convicted prisoner, they indisputably did so with respect to a pretrial detainee as well. See Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights ... enjoyed by convicted prisoners").
 
 
 7
 In light of this unequivocal pronouncement by the Supreme Court, Dr. Greer's arguments to the contrary are not persuasive. His citation to Utah law as authorization for his conduct ignores the fact that Utah Code Ann. Sec. 64-7-47 (1953) (repealed effective April 24, 1989), allowing involuntary medication of a mental patient in certain circumstances, is applicable only after a judicial involuntary commitment proceeding, see id. Sec. 64-7-36. No such proceeding was provided to Bee.
 
 
 8
 Dr. Greer's reliance on A.E. v. Mitchell, 724 F.2d 864 (10th Cir.1983), is likewise misplaced. There, involuntarily-committed mental patients challenged the Utah law allowing them to be medicated against their will. While the suit was pending in district court, and before 1980, the state law was amended so as to give the plaintiffs the relief they sought. The district court in A.E. held that the law prior to the amendment was not clearly established and the plaintiffs abandoned their challenge to that holding on appeal. See id. at 865. As this court recognized in Bee I, 744 F.2d at 1395, the amended law, which was in effect at the time of the acts challenged here, clearly sets out the right of a mentally ill person not to be subjected to involuntary treatment without a hearing. Indeed, the stipulated facts reveal that Dr. Greer knew his forcible administration of thorazine to Bee was in violation of the law. See Brief of Appellee, app. at 8, stip. 43.
 
 
 9
 Accordingly, we affirm the district court's ruling that the relevant law was clearly established and that Dr. Greer was therefore not entitled to summary judgment.
 
 II.
 
 10
 The district court awarded Bee attorney's fees in the amount of $37,560.75, and taxable costs in the amount of $1,463.58. See Bee II, 669 F.Supp. at 381. On appeal, Bee contends that the court abused its discretion in setting the hourly rate, calculating the number of hours, and reducing the award by fifty percent to reflect what the court viewed as "the limited success of plaintiff in the overall litigation." Id. at 378. Bee, who was involuntarily hospitalized in a mental institution at the time of trial, also challenges the court's refusal to award the expense of transporting him to court under guard when it was at defendants' insistence that Bee appear at trial. Finally, Bee maintains that the court improperly refused to award his counsel travel and accommodation expenses incurred in the earlier appeal in this litigation.
 
 A.
 
 11
 The Supreme Court has emphasized "that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). We have carefully reviewed the trial court's determination of the reasonable number of hours and the reasonable hourly rates, and we find no abuse of discretion. The court appropriately distinguished " 'raw' time from 'hard' or 'billable' time," Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir.1983), and properly drew on its own experience as well as the affidavits submitted by the parties in setting the hourly rates,[4] see Lucero v. City of Trinidad, 815 F.2d 1384, 1385 (10th Cir.1987).
 
 
 12
 Bee challenges the district court's decision to reduce by fifty percent the amount derived from multiplying the reasonable hours by the reasonable rates. We have held that a court may not apply a percentage reduction to an attorney's fee to reflect factors more appropriately subsumed in determining the lodestar, such as simplicity of the issues. See Cooper v. Utah, 894 F.2d 1169, 1171-72 (10th Cir.1990). This is not such a case, however. Here the district court made the reduction by taking "into account ... the limited success of plaintiff in the overall litigation." Bee II, 669 F.Supp. at 378. In Hensley, the Supreme Court specifically recognized that when a district court reduces a fee for limited success, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." 461 U.S. at 436-37, 103 S.Ct. at 1941 (emphasis added).
 
 
 13
 Significant to the district court's decision in this case was the fact that Bee dropped one of his two original claims and ultimately prevailed against only one of nineteen original defendants, and that Bee failed at trial to show a link between Dr. Greer's conduct and his supervisors or to show that the conduct was pursuant to a county policy or custom. Against these negative factors the court balanced Bee's success in obtaining a favorable ruling on a pretrial detainee's right to refuse forcible medication. In evaluating the appropriate amount by which to reduce the award, the court noted that counsel had not clearly described by issue the research and other work he had undertaken.[5] 669 F.Supp. at 377.
 
 
 14
 The district court's evaluation and application of the relevant factors is for the most part well within the parameters of its discretion as set out in Hensley, 461 U.S. at 434-37, 103 S.Ct. at 1939-41, and Ramos, 713 F.2d at 556-57, with the following exception. The district court included in its fifty-percent reduction those fees incurred in pursuing two appeals in which Bee was completely successful. Although Bee ultimately obtained limited success in the trial court, we do not believe this factor justifies a fifty-percent reduction in fees awarded for two critical appeals in which Bee obtained excellent results. On remand, the district court should reevaluate this portion of Bee's attorney's claim for fees.
 
 B.
 
 15
 Bee also objects to the district court's refusal to award him the travel and accommodation expenses his counsel incurred in pursuing the appeal that was orally argued to this court, and the refusal to award the costs incurred during trial in transporting and guarding Bee. The propriety of an award of these amounts begins with ascertaining whether they are properly characterized as fees awarded pursuant to section 1988, or whether they are costs governed by 28 U.S.C. Sec. 1920 (1988) and Fed.R.Civ.P. 54(d).
 
 
 16
 The award of costs is provided by Fed.R.Civ.P. 54(d), which states that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Items taxable as costs are set out in 28 U.S.C. Sec. 1920 as follows:
 
 
 17
 "A judge or clerk of any court of the United States may tax as costs the following:
 
 
 18
 (1) Fees of the clerk and marshal;
 
 
 19
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 
 
 20
 (3) Fees and disbursements for printing and witnesses;
 
 
 21
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 
 
 22
 (5) Docket fees under section 1923 of this title;
 
 
 23
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."
 
 
 24
 As noted by the district court in this case, the Supreme Court has examined the interrelation between Rule 54(d) and section 1920 and has determined that Rule 54(d) is not "a separate source of power to tax as costs expenses not enumerated in Sec. 1920." Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). Instead, the Court determined that "Sec. 1920 defines the term 'costs' as used in Rule 54(d)," id., and that although a court in its discretion need not award section 1920 costs under Rule 54(d), it has no discretion to award items as costs that are not set out in section 1920, id. at 441-42, 107 S.Ct. at 2497-98. The district court here considered both the travel expenses for pursuing the appeal and the expenses incident to Bee's presence at trial to be costs and refused to award them because they are not encompassed by section 1920.
 
 
 25
 Although Bee listed these expenses as costs rather than attorney's fees, his categorization of the items is not dispositive of their recoverability. See Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir.1988); O'Donnell v. Georgia Osteopathic Hosp., Inc., 99 F.R.D. 578, 581-82 (N.D.Ga.1983). This court has pointed out that "[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." Ramos, 713 F.2d at 559. We specifically included in this category an attorney's travel expenses upon a "finding that such costs would normally be billed to a private client." Id. The trial court took a seemingly contrary view, stating that "courts have historically rejected taxation of the cost of ... travel expenses." 669 F.Supp. at 379 n. 17. Because the expenses incurred by Bee's attorney in traveling to Denver for oral argument are of a type that might be included in an attorney's bill, the court on remand should determine specifically whether such expenses are normally billed to a private client in the local area and, if so, evaluate the reasonableness of the amount. On the other hand, the expenses incurred in procuring Bee's presence at trial are clearly not the type of travel expenses normally incurred by an attorney and billed to a client. Accordingly, the court properly refused to award them as costs.III.
 
 
 26
 In sum, we affirm the denial of Dr. Greer's motion for qualified immunity. We affirm the award of attorney's fees and costs in part, reverse in part, and remand for further proceedings regarding the award of fees and expenses incurred in pursuing the prior appeals.
 
 
 
 [1]
 Bee named numerous defendants along with Dr. Greer. Some of them were dismissed by stipulation or on plaintiff's motion prior to trial. Two of the seven who went to trial were granted a directed verdict, and four received favorable jury verdicts. The jury returned a verdict against Dr. Greer and awarded Bee $100 actual and $300 punitive damages. See generally Bee v. Greaves, 669 F.Supp. 372, 373-74 (D. Utah 1987). Bee does not challenge the disposition of his claims against any of the defendants
 
 
 [2]
 Dr. Greer urges us to adopt the standard stated by the Seventh Circuit in Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir.1985), cert. denied, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). To the extent that the Lojuk test is more stringent than the inquiry articulated in Eastwood, it is not the law of this circuit and we decline to follow it. See Garrett v. Rader, 831 F.2d 202, 205 n. 2 (10th Cir.1987) (expressly rejecting "a relatively strict factual identity" standard and noting adoption of standard articulated in Garcia v. Miera, 817 F.2d 650 (10th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988))
 
 
 [3]
 We also note our decision in Walters v. Western State Hosp., 864 F.2d 695, 697-98 (10th Cir.1988), in which we held that an involuntarily-committed mental patient's right to refuse psychotropic drugs was clearly established in April, 1981. In so doing, we reviewed a line of cases by the Oklahoma Supreme Court, as well as the Supreme Court's opinion in Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979)
 
 
 [4]
 Bee asserts that the district court improperly determined the amount of fees and costs without an evidentiary hearing. We are not persuaded by this contention. The record reveals that both sides presented numerous affidavits with respect to the appropriate hourly rate. Although the district court held a hearing on the fee issue at which Bee had an opportunity to point out the need, if any, to hold an evidentiary hearing, the record submitted on appeal contains no indication that Bee did so. Moreover, this court has stated that a district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate. See Lucero v. City of Trinidad, 815 F.2d 1384, 1385 (10th Cir.1987). We have also noted that expert testimony on appropriate fees "is not very helpful." Ramos v. Lamm, 713 F.2d 546, 555 n. 6 (10th Cir.1983)
 
 
 [5]
 In Hensley, the Court cautioned that an attorney "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," 461 U.S. at 437, 103 S.Ct. at 1941, and stated that it " 'would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.' " Id. at 437 n. 12, 103 S.Ct. at 1941 n. 12 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir.1978))