**JANE L., on behalf of herself and all other similarly situated; Utah Women's Clinic, P.C.; David Hansen, M.D.; Madhuri Shah, M.D.; Dan Chichester, M.D.; Kirtly Parker Jones, M.D.; Kathleen Kennedy, M.D.; Neil K. Kochenour, M.D.; Kenneth Ward, M.D., on behalf of themselves, and all others similarly situated; Julie S.; and American College of Obstetricians and Gynecologists, Utah Sections, Plaintiffs,**

v.

**Norman BANGERTER, as Governor of the State of Utah, Paul Van Dam, as Attorney General of Utah, and their successors, Defendants.**

### Civ. No. 91–C–345G.

United States District Court, D. Utah, C.D.

June 29, 1993.

Janet Benshoof, Rachel N. Pine, The Center for Reproductive Law & Policy, Roger K. Evans, Planned Parenthood Federation of America, New York City, Allen Howard Lundgren, Bugden & Lundgren, Jeffrey R. Oritt, Amer. Civ. Liberties Union of Utah, Salt Lake City, UT, for plaintiffs.

Paul M. Durham, Durham, Evans & Jones, Mary Anne Q. Wood, Anthony B. Quinn, Wood, Spendlove & Quinn, L.C., Jan C. Graham, Atty. Gen., Utah Atty. General's Office, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER IN RE ATTORNEYS FEES

J. THOMAS GREENE, District Judge.

This matter is before the court on both parties' applications for attorneys' fees and costs. The parties have filed memoranda and affidavits supporting their applications, as well as detailed objections. After due consideration, the court now issues its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiffs filed a complaint in this action on April 5, 1991, challenging the newly amended Utah Abortion Act (the "Act") and certain preexisting provisions of the Act. Utah Code Ann. §§ 76–7–301 et seq. (1990 & Supp. 1992). Prompted by the filing of this complaint, the Utah legislature revised the Act to avoid certain legal problems in a special session.[1] On May 15, 1991, plaintiffs filed an eight count Amended Complaint alleging numerous violations of the United States Constitution and the Utah Constitution. Enforcement of the contested provisions of the Act was enjoined pending a final ruling by this court.

Following a period of extensive discovery, defendants filed a Motion to Dismiss Plaintiffs' Fifth, Seventh and Eighth Causes of Action, and a Motion for Partial Summary Judgment on Plaintiffs' First, Second, Third, Fourth, and Sixth Causes of Action. A hearing was conducted on April 10, 1992, after which this court orally entered orders vacating trial, and granted the motions as to certain issues. On May 22, 1992, two written decisions were issued in which defendants' Motion to Dismiss was granted, and defendants' Motion for Summary Judgment was

---

1. For a more complete discussion of the statutory background of the Act, see *Jane L. v. Bangert-* er, 809 F.Supp. 865, 867–68 (D.Utah 1992).

granted in part. *Jane L. v. Bangerter,* 794 F.Supp. 1528 (D.Utah 1992) [Jane L. I]; *Jane L. v. Bangerter,* 794 F.Supp. 1537 (D.Utah 1992) [Jane L. II]. Remaining issues were kept under advisement awaiting the decision of the Supreme Court in the pending case of *Planned Parenthood v. Casey,* — U.S. —, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). After the Supreme Court's ruling in *Casey,* the remaining issues were resolved in an opinion of this court released on December 17, 1992. *Jane L. v. Bangerter,* 809 F.Supp. 865 (D.Utah 1992) [Jane L. III].

The final judgment in this case was entered on January 14, 1993.[2] Both parties subsequently filed applications for attorneys' fees and costs, each claiming to be the "prevailing party" under 42 U.S.C. § 1988, and Fed.R.Civ.P. 54(d). Plaintiffs argue that they prevailed because the alleged "core" of the Act (prohibition of elective abortion with certain exceptions), along with the spousal notification requirement, were ruled to be unconstitutional.[3] Defendants claim to be the prevailing party because the court ruled in their favor on all of the other claims.[4]

## ANALYSIS

## I. PLAINTIFFS' ATTORNEYS' FEES

■ Title 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The standard for qualification as a "prevailing party" is whether plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v.*

*Helgemoe,* 581 F.2d 275, 278–279 (1st Cir. 1978)). More recently, the Supreme Court has held that "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

■ There can be no doubt that plaintiffs succeeded on significant issues that brought them some of the benefits they sought in bringing this action. This court's decision that § 76–7–302(2) of the Utah Code is unconstitutional insofar as it relates to abortions before 21 weeks, as well as its ruling striking down Utah's spousal notification statute, both pertain to such significant issues.

Because plaintiffs have "prevailed" on significant issues in this action, they are entitled under § 1988 to a "reasonable attorney's fee." The first step in determining a reasonable fee is to establish a "lodestar" figure. This is done by multiplying the hours plaintiffs' counsel reasonably spent on the case by a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *Clayton v. Thurman,* 775 F.2d 1096, 1098 (10th Cir.1985).

### A. *Reasonable Hours*

■ Plaintiffs' burden in an application for attorneys' fees is to "prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir.1986). To meet that burden, the Tenth Circuit requires that lawyers keep "meticulous, contemporaneous time records ..." *Ramos v.*

2. By agreement of the parties, the court has stayed final judgment and enforcement of the provisions which survived plaintiffs' lawsuit until July 13, 1993. The relevant provisions of Utah law so stayed are Utah Code Ann. §§ 76–7–301, 76–7–301.1, 76–7–302(3), 76–7–307, 76–7–308, 76–7–310, 76–7–314 and 76–7–315.

3. Utah Code Ann. §§ 76–7–301(2), 304(2) (1990 & Supp.1992). *See Jane L. III,* 809 F.Supp. at 870, 876–877.

4. The Court ruled for defendants on all state and federal claims brought attacking Utah Code Ann. §§ 76–7–301, 302(3), 307, 308, 310, 314, and 315. *See Jane L. III,* 809 F.Supp. at 871–76, 877–80; *Jane L. II,* 794 F.Supp. at 1542–43, 1547–48, 1549–50; *Jane L. I,* 794 F.Supp. at 1534–36.

*Lamm,* 713 F.2d 546, 553 (10th Cir.1983). In particular,

> These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

*Id.*

■ Before submitting a fee application to the court, the prevailing party must "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40.

Upon review of the time records, this court has determined that five of plaintiffs' counsel have not met their burden of providing time records which adequately designate how much time was allotted to specific tasks.[5] The time records for these five attorneys represent over 50% of the total hours which were submitted by plaintiffs. For example, on 4/10/92, Janet Benshoof's time records state that she spent 16.5 hours in preparation for a hearing, attendance at the hearing, a

meeting with clients, travel and "discussion." Benshoof Declaration at A7. Her entry for 3/13/92 lists preparation for a hearing, attendance at the hearing, travel and "review" for a total of 14 hours. *Id.* Rachel Pine's entry for 3/18/92 reads: "Travel; prepare for hearing before magistrate; hearing before magistrate; press" for a total of 10 hours. Pine Declaration at A4. No attempt was made in these entries to break down time among the several different tasks performed.

In addition, it appears that with few exceptions, plaintiffs' counsel as a whole have not adequately excluded requests for "excessive, redundant, or otherwise unnecessary" hours. While some of the time plaintiffs' attorneys devoted to this case is clearly compensable, much of the time is not compensable. Hours spent on such things as unspecified "review" time, press conferences, excessive travel, and unnecessary duplicative time should be disallowed or reduced.[6]

The Tenth Circuit imposes the task upon the district judge of distinguishing between "raw" time and "billable" time, and determining the number of hours reasonably spent:

> The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. When scrutiniz-

---

5. The time records for the following attorneys fit into this category: Janet Benshoof, Rachael Pine, Jeffrey Oritt, Julie Mertus, and Margaret Martin. Julie Mertus requests compensation for 600 hours of work but has failed to submit any time records to support her request. Margaret Martin's records are apparently noncontemporaneous, and include one time entry of 190 hours covering a two month period.

6. Defendants made an analysis of the time records submitted by plaintiffs and concluded that much of the time should be noncompensable. In this regard, defendants have urged that the following hours be eliminated:
   a. Public relations—161 hours (Based upon 71 separate entries). Defs.' Objections, Exh. J.
   b. "Review"—617 hours (Based upon 215 separate entries). Defs.' Objections, Exh. L.
   c. Excessive travel time—405 hours (Based upon 45 separate entries). Defs.' Objections, Exh. N.
   d. Duplication of time, including excessive time for "discussion," meetings, telephone conferences—1,113 hours (Based upon 567 entries). Defs.' Objections, Exh. T.

e. Excessive presence of attorneys at hearings—210 hours (Based upon 36 separate entries). Defs.' Objections, Exh. M.
f. Post decision time—264 hours (Based upon 117 separate entries). Defs.' Objections, Exh. O.
g. Lobbying time—66 hours (Based upon 27 separate entries). Defs.' Objections, Exh. P.
h. Noncompensable miscellaneous activities including clerical time—54 hours (Based upon 21 separate entries). Defs.' Objections, Exh. K.
i. Time spent in representations of unsuccessful parties whose claims were dismissed—288 hours (Based upon 115 separate entries by 9 attorneys). Defs.' Objections, Exh. G.
If all of this time were eliminated as urged by defendants, 3,177 hours would be removed from plaintiffs' lodestar calculation. However, defendants have grouped clearly compensable, albeit inadequately identified time within noncompensable categories. This problem limits the usefulness of these calculations to the court.

ing the actual hours reported, the district court should distinguish "raw" time from "hard" or "billable" time to determine the number of hours reasonably expended.

*Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). In those instances where time records are not sufficiently detailed, as is the case with five attorneys in this case, the Supreme Court has offered the following guidance: "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

The reasons for reducing plaintiffs' claimed compensable time are numerous. Plaintiffs' time records include unspecified or inadequately specified "review" time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, noncompensable public relations time, noncompensable time expended after the judgment was rendered, and noncompensable clerical or "overhead" time.

### 1. Review Time

"Review" is a somewhat ambiguous term that often turns up in attorneys' time records. In this case, there are several instances where plaintiffs' counsel refer to unspecified or inadequately specified "review" time. This is evidence of excess. As noted in *In re Wicat Securities Litigation,* 671 F.Supp. 726 (D.Utah 1987), "[t]he word 'review' seems to be a catchall category with great versatility in counsels' applications. It is also a signal for the padding of hours." *Id.* at 735–36. Apart from the matter of "padding," however, excessive requests for "review" time may indicate that counsel have not adequately exercised billing judgment before submitting their fee application.

### 2. Travel Time

One category of time that is often inflated is that devoted to travel. A large amount of travel time was involved in this action because most of plaintiffs' attorneys were centered in New York City. In this regard, plaintiffs have submitted 45 travel entries which cover at least 300 hours of claimed compensable time.

Travel time is "essentially unproductive," and therefore appropriately "compensable at a reduced hourly rate." *Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir.1990) (holding that such a finding is within the trial court's discretion); *see also Igbal v. Gold Course Superintendents Ass'n of America,* 717 F.Supp. 756, 757 (D.Kan.1989), *aff'd,* 900 F.2d 227 (10th Cir.1990); *Auburn Police Union v. Tierney,* 762 F.Supp. 3, 4 (D.Me.1991) (court awarded $10 per hour for travel time for out-of-state counsel). It is apparent to this court that the travel time submitted by plaintiffs' counsel is excessive. More importantly, the travel time charges were unnecessary in view of the fact that this case could have been handled adequately by local attorneys.

### 3. Overlapping and Duplicative Time

Another category of time in which reductions are appropriate is unnecessary duplicative time. As the Tenth Circuit said in *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983), "[I]f the same task is performed by more than one lawyer, multiple compensation should be denied." *Id.* at 554. The problem of duplication of hours is frequently encountered in cases of multiple representation because too many attorneys (all billing their time) are present at meetings, hearings, and depositions: "The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Id.* As this court pointed out in *Bee v. Greaves,* 669 F.Supp. 372 (D.Utah 1987), *aff'd and rev'd in part,* 910 F.2d 686 (10th Cir.1990):

> "[I]t is often important to analyze and exclude duplication of time spent on aspects of a case where several lawyers, paraprofessionals and/or clerks are working simultaneously."

*Id.* at 375 n. 2.

In this case, among the attorneys of record for plaintiffs were three local attorneys, several attorneys from the Center for Reproductive Law and Policy, attorneys in a private non-local law firm, and an attorney from Planned Parenthood Federation of America. In all, 17 lawyers and one paralegal submitted affidavits in connection with plaintiffs' request for attorneys' fees. Few of these lawyers participated in oral argument.

Plaintiffs' time records indicate that an enormous amount of time, much of it duplicative, was spent discussing the case with each other on the telephone or in meetings.[7]

As to time spent in hearings, this court determines that plaintiffs' have made excessive claims for compensation with respect to at least two occasions. Four of plaintiffs' attorneys submitted compensation requests for attending the March 13, 1992 hearing concerning the Motion to Dismiss and Motion for Summary Judgment. Seven attorneys submitted compensation requests for attending the April 10, 1992 hearing.

In *Ramos v. Lamm,* the Tenth Circuit ruled that "the presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court." 713 F.2d at 554 n. 4. The court further declared that "[if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *Id.* (citation omitted).

Plaintiffs were obligated to eliminate this excess and duplicative time from their time records before submitting them to the court. Because plaintiffs have failed to do this, the court is compelled to make appropriate reductions itself.

3. Public Relations, Press Lobbying, Etc.

In this case, plaintiffs' attorneys spent a great deal of time in public relations efforts, including press conferences, interviews, and lobbying efforts at the legislative level.

■ Time spent by attorneys in public relations is noncompensable. *Utah Int'l, Inc. v. Department of Interior,* 643 F.Supp 810, 831 n. 41 (D.Utah 1986); *Auburn Police Union v. Tierney,* 762 F.Supp. 3, 4–5 (D.Me. 1991) (no time awarded for post-trial interviews); *Huntington Branch NAACP v. Town of Huntington,* 749 F.Supp. 62, 65 (E.D.N.Y.1990) ("[T]ime spent being interviewed by the press and touring Huntington

minority community should not be compensated....."). Moreover, time spent on advertisements submitted or created in connection with litigation is not compensable.[8] Plaintiffs' time entries are replete with references to media and public relations matters.

4. Post Judgment Time

■ Plaintiffs' attorneys spent a significant block of time after this court's December 17, 1992 final decision posturing for and planning an appeal. There was also substantial time spent lobbying members of the Utah Legislature to change Utah's abortion statutes. However, it is evident that most of the hours devoted to these two activities pertained to issues upon which plaintiffs did not prevail.

This time does not fit under the rubric of "fees for a prevailing party." To the contrary, compensation for all such hours is inappropriate.

5. *Preparation of Fee Application*

■ Reasonable hours expended in preparation of a fee application are at least partially compensable, "although hours not spent representing the client are at best on the borderline of what Congress intended to be compensable." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1206 (10th Cir.1986). Plaintiffs' attorneys spent over 130 hours on their fee application and in opposing defendants' application. In the opinion of this court, these hours are excessive, and should be reduced.

6. Clerical or Overhead Time

■ Plaintiffs' records also refer to time spent filing and retrieving documents, time devoted to reading background cases, and other miscellaneous matters. These hours should be eliminated or reduced. This is the sort of time that is generally absorbed by a private firm as overhead, and is therefore not

---

**7.** Nearly half of all time entries submitted by plaintiffs' counsel refer to telephone conferences and meetings. *See* Defs.' Objections, Exh. T.

**8.** On March 14, 1991, Janet Benshoof claims 2.75 hours for an entry which includes "ad work." This "ad work" apparently relates to her

creation of an advertisement run in New York City newspapers that "In Utah, They Know How To Punish A Woman Who Has An Abortion. Shoot Her." *See* Lance Gurwell, *Utah Congressman Blasts ACLU Over Abortion Ad,* U.P.I., March 26, 1991. (available on LEXIS/NEXIS).

properly billable to defendants. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir.1983).

Pursuant to the principles enunciated above, and after extensive review of plaintiffs' time records, this court determines that plaintiffs' requested hours far exceed the hours that reasonably would be required by reasonably competent attorneys in handling this litigation. Accordingly, the court has decided to make the following reductions in plaintiffs' requested hours [9]:

| | |
|---|---|
| J. Benshoof | 451.65 to 301.10 |
| R. Pine | 353.10 to 235.40 |
| S. Heller | 117.50 to 113.50 |
| E. Goetz | 67.67 to 65.50 |
| J. Mertus | 600.00 to 60.00 |
| L. Lapidus | 91.00 to 71.00 |
| D. Bravo | 632.75 to 506.20 |
| C. Albissa | 167.55 to 137.55 |
| A. Dwyer | 41.65 to 29.15 |
| D. Gans | 47.55 to 31.70 |
| R. Evans | 58.75 to 25.00 |
| J. McCarroll | 33.70 to 26.96 |
| E. Gartner | 392.30 to 360.90 |
| J. Oritt | 565.05 to 376.70 |
| H. Lundgren | 266.30 to 177.50 |
| K. Kendell | 74.00 to 55.50 |
| M. Martin | 471.00 to 314.00 |

Because Julie Mertus failed to provide the court with any time records supporting her hours request, the court reduces her request by 90%.[10] The court reduces by 1/3 the hours requested by the other four attorneys who failed to submit adequate time documentation.[11]

This court determines that the reduced hours set forth above constitute reasonable compensable hours. The reductions are necessary in order to arrive at a more reason-

able hour figure for plaintiffs' lodestar calculation.

### B. *Reasonable Hourly Rates*

■ Appropriate hourly rates for counsel are calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). In determining those rates, the fee applicant should produce evidence that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* 896 at n. 11, 104 S.Ct. at 1547 n. 11. The legislative history of § 1988 reveals that Congress intended a reasonable attorney's fee to be "adequate to attract competent counsel, but ... not produce windfalls to attorneys." S.Rep. No. 1011, 94th Cong., 2nd Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

Defendants have not objected to the rates requested by plaintiffs' local counsel, but take serious issue with the rates requested by the New York attorneys.[12] These rates range from a high of $355.00 per hour for Janet Benshoof [13] and $310.00 per hour for Rachel Pine,[14] to an average of around $200.00 for the other New York attorneys. The prevailing rates locally for excellent trial counsel experienced in civil rights litigation range from $135.00 to $185.00 per hour. Affidavit of Glenn C. Hanni, ¶¶ 3–5. Local rates for attorneys with less experience range from $70.00 to $125.00 per hour. Affi-

---

**9.** "A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir.1986).

**10.** Julie Mertus supplied a conclusory affidavit in which she avers that she worked over a five-month period "solely on this case" as a staff attorney for the Reproductive Freedom Project of the A.C.L.U. This is corroborated to some degree by reference to her work in other attorneys' time records.

**11.** *See supra* note 5.

**12.** Plaintiffs' lead counsel, Janet Benshoof and Rachael Pine, are currently president and director of domestic legal projects, respectively, of

the Center for Reproductive Law & Policy. From the beginning of this litigation until June, 1992, they were employed as director and senior staff attorney, respectively, of the American Civil Liberties Union's Reproductive Freedom Project ("RFP"). Similarly, for much of the time for which fees are requested, Dominique Bravo, Simon Heller, Andrew Dwyer, Ellen Goetz, Julie Mertus and Margaret Martin, were employees of the RFP.

**13.** Janet Benshoof has 20 years of experience in the practice of law and is experienced in abortion litigation.

**14.** Rachel Pine has practiced law for 9 years and is experienced in abortion litigation.

davit of Douglas Parry, ¶¶ 5–6; Affidavit of Michael H. Wray, ¶¶ 2–5. Rates claimed by seasoned and highly competent counsel representing the State of Utah range from $155 per hour to $50 per hour. This court has looked to years of experience as one important factor in fixing rates. *In re Wicat Sec. Lit.*, 671 F.Supp. 726, 732 (Utah 1987). Out-of-state counsel are not entitled to premium rates based on rate structures in other communities when similar expertise—with significantly lower rates—is available locally. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *see also Igbal v. Golf Course Superintendents Ass'n of America*, 900 F.2d 227, 228 (10th Cir.1990).

The overall experience of Ms. Benshoof and Ms. Pine in litigation is not equal to that of local seasoned front-line litigators, with more years of experience. However, their specialized backgrounds in abortion matters is a factor of importance.[15] Accordingly, the court fixes the rate of Ms. Benshoof and Roger K. Evans, Director of Planned Parenthood, at $155.00 per hour, and that of Ms. Pine at $125.00 per hour. The court has correspondingly adjusted the rates of other plaintiffs' attorneys to reflect the rates of the relevant community.[16]

### C. *Adjustments to the Lodestar*

The Supreme Court stated in *Hensley* that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." 461 U.S. at 434, 103 S.Ct. at 1940. Where a plaintiff has prevailed on only some claims, there remain two questions to address:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that

makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.*

With regard to the first question, this court dismissed 17 of the 28 plaintiffs in its May 22, 1992 decision because their claims were found to be without merit. *Jane L. v. Bangerter*, 794 F.Supp. 1537, 1551 (D.Utah 1992) [Jane L. II]. Plaintiffs claim that the dismissed claims were so "inextricably intertwined" with their success on the "core issues" of this case that it is inappropriate not to compensate them for all work done on the case. The issue here is whether the unsuccessfully prosecuted claims were related or unrelated to the successfully prosecuted claims. The Supreme Court in *Hensley* described the case of a common core of facts or related legal theories as follows:

Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435, 103 S.Ct. at 1940. By way of contrast, the court described unrelated claims in this manner:

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his [or her] work

---

**15.** Abortion litigation is not a "most unusual" form of civil rights litigation. Hence, this court should apply local area fee rates. *Ramos*, 713 F.2d at 555. *But see Lifchez v. Hartigan*, 1991 WL 96435 at *2, 1991 U.S.Dist. LEXIS 7397 at *5 (N.D.Ill. May 29, 1991) (district court awarded fees ranging from $155 to $185 per hour for attorneys who "have established their expertise in reproductive rights law or civil rights litigation.").

**16.** These attorneys' rates are reduced according to their years of experience. The years of experience figure was calculated as of April 1992.

| | |
|---|---|
| Jean McCarroll (13 yrs. experience) | $130 |
| Simon Heller (6 yrs.) | $105 |
| Ellen Goetz (4 yrs.) | $ 95 |
| Julie Mertus (4 yrs.) | $ 95 |
| Eve Gartner (4 yrs.) | $ 95 |
| Catherine Albissa (3 yrs.) | $ 90 |
| Kathryn D. Kendell (3 yrs.) | $ 90 |
| Lenora Lapidus (2 yrs.) | $ 85 |
| Andrew Dwyer (2 yrs.) | $ 85 |
| Dominique Bravo (1 yr.) | $ 75 |
| Margaret Martin (recent law graduate) | $ 55 |
| David Gans (paralegal) | $ 55 |

on another claim.... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits....

*Id.* at 434–35, 103 S.Ct. at 1940.

■ In the opinion of this court, this case falls within the category of several separate lawsuits brought in one action. For example, challenges to the serious medical emergency statute, the spousal notification statute, and the statute banning fetal experimentation all involve completely different sets of facts. Further, the legal theories of involuntary servitude, equal protection, separation of church and state, free exercise of religion, freedom of speech, and the corresponding state constitutional claims are not interrelated with the theories behind the successfully prosecuted claims. In this case, it appears that at least in some instances, separate law firms and counsel were engaged to develop separate claims and theories. In all events, this court concludes that the various claims brought by plaintiffs stand independent of one another. Hence, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved'" and, therefore, "no fee may be awarded for services on the unsuccessful claim." *Id.* at 435, 103 S.Ct. at 1940 (citations omitted).

Due to the lack of specificity in plaintiffs' time records, it is impossible to determine exactly how many hours were spent on unsuccessful claims. It is apparent to the court, however, that a very substantial portion of requested time was spent on claims essentially unrelated to the successfully prosecuted claims.[17]

With regard to the second issue identified in *Hensley,* the Supreme Court stated that in determining a reasonable fee, "the most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. Plaintiffs achieved success on significant issues in this case by maintaining women's right to abortions before 21 weeks without undue interference by the state, and by obtaining a ruling striking down the spousal notification statute. However, in terms of what was presented and argued to the court, plaintiffs' losses were even more significant. Plaintiffs failed to persuade the court that the 21 weeks abortion cut-off date set out in § 76–7–302(3) was impermissible. This court's ruling that §§ 76–7–307 and 308 (post-viability abortion requirements for doctors) are constitutional also went against plaintiffs. Other unsuccessful statutory challenges were those brought against § 76–7–314 (criminal liability) and § 76–7–315 (serious medical emergency). Plaintiffs not only did not prevail on their state constitutional claims, but attempted to abandon them. Finally, plaintiffs prevailed on a very small percentage of their legal theories for relief on the claims in which they were successful.

In acknowledgment of the limited success of their claims, plaintiffs have voluntarily reduced their lodestar claim by 20%, from $827,484.30 to $661,987.44.[18] Based upon reasonable compensable hours and hourly rates, the court has calculated plaintiffs' lodestar figure to be $293,741.55. The court finds that in order to reflect plaintiffs' limited success in this action, this lodestar figure should be reduced by 85% for the firm of Berle, Kass & Case, and 75% for the other plaintiffs' counsel, yielding an adjusted fee award of $69,656.37.

## II. DEFENDANTS' ATTORNEYS' FEES

■ Defendants have submitted a request for attorneys' fees and expenses totalling $300,000.77. Prevailing defendants are granted attorneys' fees under § 1988 only in limited circumstances:

A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass

---

17. Time spent by attorneys on unsuccessful claims is clearly indicated in at least one instance. The law firm of Berle, Kass & Case submitted documentation for hours totalling $71,193.00, for worked performed primarily on the Free Exercise and Establishment Clause claims.

18. In addition, plaintiffs claim out-of-pocket expenses in the amount of $38,766.37, for a total attorneys' fee award of $700,753.81. *See infra* III.B.1.

or embarrass the defendant. *See* HR Rep. No. 94–1558, p. 7 (1976); *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421 [98 S.Ct. 694, 700, 54 L.Ed.2d 648] (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.")

*Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983); *Figures v. Board of Public Utilities,* 967 F.2d 357, 362 (10th Cir.1992). This court has determined that plaintiffs' case involved "unrelated claims," which should be treated as if they had been raised in separate lawsuits. To the extent these claims are frivolous, or meritless, defendants may receive attorneys' fees involved in responding to them under 42 U.S.C. § 1988. *See Hensley,* 461 U.S. at 435 n. 10, 103 S.Ct. at 1940 n. 10. An additional basis for such an award is found in the inherent powers of the court. *Chambers v. NASCO, Inc.,* —— U.S. ——, —— – ——, 111 S.Ct. 2123, 2133–34, 115 L.Ed.2d 27 (1991). To the extent that such claims were unreasonable and prosecuted in bad faith, defendants also may be entitled to an award under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11.

### A. *Defendants' Time Records and Fees*

Defendants' time records are clear, concise, and specific. It is also apparent that defendants' counsel exercised appropriate billing judgment before submitting their records to the court. They did not bill for excessive travel or public relations time, and, with few exceptions, time entries for hearings, meetings, and conference calls were billed to only one attorney to avoid excessive duplicative time.[19] Those instances where an attorney listed multiple activities under one time entry usually involved fully compensable activities. This court further finds, with one exception, that defendants' requested hourly rates are reasonable.[20]

### B. *Claims For Which Defendants Are Awarded Attorneys' Fees*

Defendants have alleged that most of plaintiffs' lawsuit is frivolous, groundless, and/or brought in bad faith. After review of these arguments, the court concurs as to the following four claims:

#### 1. Involuntary Servitude

In their Sixth Cause of Action, plaintiffs allege that prohibiting abortion forces women into slavery or involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution.[21] In May 1992, this court held that "[i]t strains credulity to equate the carrying of a child to term with 'compulsory labor,' and concluded that "the argument borders on the frivolous." *Jane L. v. Bangerter,* 794 F.Supp. 1537, 1549 (D.Utah 1992) [Jane L. II].

The frivolity or groundlessness of the Involuntary Servitude claim was not before the court at the time the May 22, 1992 Memorandum Decision and Order was issued. However, upon analysis of the historical background of the Thirteenth Amendment, along with consideration of more recent Supreme Court interpretation of the Amendment's scope, this court found at that time that the "contention that one of the purposes of the Thirteenth Amendment was to secure the right of elective abortion totally lacks merit." *Id.* at 1548–49. Because plaintiffs' Thir-

---

**19.** The court has made minor reductions for those few entries involving clerical activities, excess "background" research, work done by inexperienced attorneys, and overlapping or duplicative time.

**20.** Stuart Jones requests a rate of $70 per hour for work done as a law clerk. The court reduces this rate to $55 per hour. The rates asserted by several of defendants' counsel appear to be significantly understated. For example, Professor Richard Wilkins requests a rate of $50 per hour, doubtless meant to reflect a purposeful reduction

in the nature of public service. Plaintiffs have not challenged the reasonableness of any of defendants' claimed hourly rates.

**21.** Since the Thirteenth Amendment itself only applies to the federal government, plaintiffs' Involuntary Servitude claim is more appropriately characterized as being based upon the Thirteenth Amendment as incorporated through the Due Process Clause of the Fourteenth Amendment. The same characterization applies to plaintiffs' First Amendment claims discussed below.

teenth Amendment claim was frivolous and groundless, the court awards defendants attorneys' fees incurred in opposing this argument in the amount of $8,071.46. Defs.' Mem. Supp. Defs.' Bill Costs & Mot. Atty. Fees Expenses ("Defs.' Atty. Fees") Ex. I.[22]

### 2. Equal Protection

Plaintiffs' Fourth Cause of Action alleges that because the Utah Abortion Act primarily impinges upon women's procreative choices, the Act discriminates on the basis of gender in violation of the Fourteenth Amendment of the United States Constitution. This court summarily disposed of the equal protection claim because plaintiffs were unable to establish that the Utah Act did anything more than " 'realistically reflect[ ] the fact that the sexes are not similarly situated in certain circumstances.' " *Id.* at 1549 (*quoting Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981)). In addition, plaintiffs did not allege facts sufficient to support an allegation of "invidious discrimination." Accordingly, this Court finds their claim to have been without foundation. *See United States v. State of Mississippi,* 921 F.2d 604, 609 (5th Cir.1991) (failure to establish prima facie case an important factor in making frivolity determination). Defendants are therefore granted attorneys' fees of $5,880.37. Defs.' Atty. Fees Ex. M.

### 3. Establishment Clause

■ In their Fifth Cause of Action, plaintiffs alleged that the Utah Act violated the Establishment Clause of the First Amendment. Plaintiffs argued that the Act failed the three-part test set forth in *Lemon v. Kirtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), in that (1) its preamble embodied a prohibited "religious viewpoint" concerning rights of unborn children; and (2) the Act mirrored and therefore unconstitutionally endorsed the position of the Church of Jesus Christ of Latter–Day Saints.

Similar arguments have been soundly rejected in previous Supreme Court cases. In *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Court held that a statute does not violate the "secular purpose" prong of the *Lemon* test simply "because it 'happens to coincide or harmonize with the tenets of some or all religions.' " *Id.* at 319, 100 S.Ct. at 2689 (citation omitted). Subsequent cases have reaffirmed this rule. *Wallace v. Jaffree,* 472 U.S. 38, 55–56, 105 S.Ct. 2479, 2488–89, 86 L.Ed.2d 29 (1985) (statute not violative simply because it is "motivated in part by a religious purpose."); *Bowen v. Kendrick,* 487 U.S. 589, 602, 108 S.Ct. 2562, 2570, 101 L.Ed.2d 520 (1988) ("a court may invalidate a statute only if it is motivated *wholly* by an impermissible purpose.") (emphasis added). Moreover, the *Harris* Court explicitly held that provisions similar to those set forth in the Act are "as much a reflection of 'traditionalist' values towards abortion, as it is an embodiment of the views of any particular religion." *Harris,* 448 U.S. at 319, 100 S.Ct. at 2689. Furthermore, it is manifest that the evidence supporting the plaintiffs' argument in *Harris* was much more substantial than the evidence supporting plaintiffs' claim here. *See McRae v. Califano,* 491 F.Supp. 630, 702–15 (E.D.N.Y.1980); *Jane L. II,* 794 F.Supp. at 1545.

Plaintiffs' allegations that the Utah Act violated the "primary effect" prong of the *Lemon* test were likewise frivolous and without foundation. This is even more apparent in light of the Supreme Court's ruling in *Bowen v. Kendrick,* which involved legislation posing a significantly greater danger of having an unconstitutional "effect" on religion than does the Utah Act. The "entanglement" prong of the *Lemon* test was inapplicable to this case.

Based on the evidence before it, and given the clear holdings of *Harris, Wallace,* and *Bowen,* this court finds that plaintiffs knew, or should have known, that their Establish-

---

**22.** Part of defendants' requested fees were based upon the number of pages dedicated to each particular issue in their Motion for Summary Judgment, representing a rule-of-thumb allocation of time incurred in researching, briefing, and arguing that issue. For example, since 4% of the pages in their summary judgment brief were dedicated to the claim of involuntary servitude, defendants have included 4% of the fees incurred preparing the brief with their fees directly attributable to the involuntary servitude claim.

ment Clause claims were frivolous, and without legal or factual foundation at the time they filed their Complaint. *Crabtree v. Muchmore*, 904 F.2d 1475, 1477 (10th Cir. 1990) (making a similar finding in a case involving judicial absolute immunity); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3rd Cir.1990) (the fact that plaintiffs knew or should have known the legal or evidentiary deficiencies of their case is an acceptable basis for awarding defendants attorneys' fees under § 1988). Litigating these claims wasted valuable time and resources and unnecessarily delayed the final resolution of this case. For this reason, the court awards defendants attorneys' fees of $29,879.63.[23]

### 4. State Constitutional Claims

Plaintiffs brought eight causes of action based on the Federal Constitution, and eight analogous causes of action based on the Utah Constitution. Plaintiffs did not prevail on any of these state constitutional claims. For the most part, state law in this case mirrors federal law. The court has already found that several of plaintiffs' federal claims were frivolous and without foundation. It follows that the corresponding state claims were frivolous as well.

The court finds from the record in this case that the state constitutional claims were brought in bad faith. In *Hodgson v. Minnesota*, No. 3–81–538, 1985 WL 6547 at *7 (D.Minn. Jan 23, 1985), an earlier abortion case in which plaintiffs' counsel were involved, the State of Minnesota successfully moved for dismissal of state constitutional claims based upon *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). After extensive discovery in this case, and well after the

discovery cut-off date, while the state constitutional claims were before the court on defendants' motions for summary judgment and dismissal, plaintiffs sought dismissal of their state claims, without prejudice, based upon *Pennhurst*. Plaintiffs contended that even though the Governor and Attorney General of Utah as named parties had raised no objection to the action proceeding in federal court, the State of Utah had not so consented. This appeared to be a last ditch effort to avoid a ruling by the court on the merits as to matters which at all times prior thereto had been urged upon the court by plaintiffs' counsel. The court found that the State had waived its Eleventh Amendment immunity, and proceeded to address the state claims on the merits. *See Jane.L. I*, 794 F.Supp. 1528 (D.Utah 1992).

It is apparent that plaintiffs believed from the outset that this court lacked jurisdiction of the state law claims. In fact, although these issues were included in the case management orders, plaintiffs never attempted to brief or argue their state claims on the merits. Alleging these claims in the Complaint, and then at the last minute, after the state had clearly consented to suit, attempting to obtain a voluntary dismissal, without prejudice, was a frivolous action, apparently carried out in bad faith. It wasted valuable court time, caused unnecessary expense, and significantly delayed the final resolution of plaintiffs' other claims. Accordingly, the court grants defendants attorneys' fees of $15,847.47 incurred responding to the state constitutional claims, and in briefing and arguing their opposition to Plaintiffs' Motion to Voluntarily Dismiss Claims Arising Under Utah Constitution. Defs.' Atty. Fees Ex. N. These fees are assessed against and should be paid by plaintiffs' counsel since the actions

---

**23.** Defendants also seek attorneys' fees for having to defend plaintiffs' Free Exercise Clause claims, also included in plaintiffs' Fifth Cause of Action. It is doubtful that plaintiffs ever had standing to assert violations of the Free Exercise Clause because the Utah Act does not impose criminal sanctions on clergy or counselors who counsel those in their care to have an abortion. The court assumed, however, that plaintiffs' had standing without deciding the issue, and proceeded to dismiss the Free Exercise claims on the merits. *See Jane L. II*, 794 F.Supp. at 1546–

**47.** Because of the approach the court took in dismissing plaintiffs' Free Exercise claims, the court declines to find those claims to be frivolous, thus distinguishing them from the Establishment Clause claims. Time spent on the Free Exercise Clause claims were lumped together in defendants' time records with time spent on the Establishment Clause claims. Since the time spent by defendants' counsel is not readily allocable as between those two claims, the court allows recovery of 50% of the total reasonable requested amount of $59,757.25 set forth in Defs.' Exh. J.

in question were driven by decisions of counsel rather than attributable to the plaintiffs themselves.

### 5. Fee Application

Prevailing defendants, like prevailing plaintiffs, are entitled to at least partial compensation for the time spent preparing their fee application. The court awards defendants 50% of the amount requested, or $7,719.50. Defs.' Atty. Fees Ex. R.

## III. COSTS AND EXPENSES

Both parties request reimbursement for costs and out-of-pocket expenses incurred in the course of litigation. As the Tenth Circuit noted in *Bee v. Greaves*, 910 F.2d 686 (10th Cir.1990), "The propriety of an award of these amounts begins with ascertaining whether they are properly characterized as fees awarded pursuant to section 1988, or whether they are costs governed by 28 U.S.C. § 1920 and Fed.R.Civ.P. 54(d)." *Id.* at 690.

### A. *Costs*

■ Rule 54(d) of the Federal Rules of Civil Procedure states that "*costs* shall be allowed as of course to the prevailing party unless the court otherwise directs." (emphasis added). The word "costs" in rule 54(d) is a term of art, defined by 28 U.S.C. § 1920. *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 1141 n. 3, 113 L.Ed.2d 68 (1991); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). While this court is given broad discretion in awarding costs, "it has no discretion to award items as costs that are not set out in section 1920." *Bee v. Greaves*, 910 F.2d at 690. Only the following items may be taxed as costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of [Title 28];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of [Title 28].

28 U.S.C. § 1920.

Items proposed by prevailing parties as costs "should always be given careful scrutiny." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir.1988) (quoting *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964)). The court must first determine whether the claimed costs were "necessarily incurred in the litigation." *Id.* If so, the court must then decide whether the claimed costs are reasonable. *Id.* at 1246.

### 1. Plaintiffs' Costs

In their memorandum in support of their application for attorneys' fees, plaintiffs requested reimbursement for the following "costs" and "expenses"[24]:

* CRLP

| | | |
|---|---|---|
| (a) | airfare | $22,709.57 |
| (b) | overnight courier service | $ 2,510.31 |
| (c) | copies, postage, phone, faxes, LEXIS research | $13,546.49 |
| (d) | deposition transcripts | $ 9,223.59 |
| (e) | court transcript costs | $ 795.50 |
| (f) | filing fee for complaint | $ 120.00 |

* Planned Parenthood

| | | |
|---|---|---|
| (a) | deposition transcript costs | $ 2,765.10 |

* Jeffrey Oritt
  (a) notice of appeal fee   $ 105.00

* TOTAL   $51,775.56

Plaintiffs have lumped together their "costs," with "expenses" which are more appropriately sought as part of an attorney's fee under § 1988. The parties' "categorization of items

---

**24.** Plaintiffs originally filed a bill of costs for $11,304.38. Later, in their memorandum in support of their application for attorneys' fees, plaintiffs raised the amount of their claimed costs and expenses to $51,775.56.

is not dispositive of their recoverability,"[25] so the court will separate the claimed amounts into "costs" and "expenses."[26]

Of the items listed above, the following are properly categorized as "costs" under Rule 54(d):

| | |
|---|---|
| * deposition transcripts | $11,988.69 |
| * court transcript costs | $ 795.50 |
| * filing fee for complaint | $ 120.00 |
| * notice of appeal fee | $ 105.00 |
| | $13,009.19 |

Some of plaintiffs' identified costs are not recoverable. For instance, the Notice of Appeal filing fee pertains to claims on which plaintiffs lost, and should not be included in the taxation of costs.

### 2. Defendants' Costs

Defendants have filed a bill of costs amounting to $12,754.69. The items sought include court reporter fees ($1,326.50), exemplification of copies fees ($3,571.98), and deposition transcript fees ($7,856.21).

■ A prevailing party under Rule 54(d) is usually the one for whom judgment is entered. In this case, however, both parties were successful on some claims, and both parties have requested costs in approximately equal amounts. For these reasons, the court exercises its discretion and orders the parties to bear their own costs.[27]

### B. *Expenses*

Section 1988 provides that, in civil rights actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). While only those items listed under § 1920 may be awarded as "costs," other out-of-pocket expenses incurred during litigation may be awarded as

"attorney's fees" under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir.1990) (citing *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983)).

### 1. Plaintiffs' Expenses

■ Plaintiffs request the following "expenses" under § 1988:

| | |
|---|---|
| * airfare | $22,709.57 |
| * overnight courier service | $ 2,510.31 |
| * copies, postage, phone, faxes, LEXIS research | $13,546.49 |
| | $38,766.37 |

Attorney travel expenses are normally billed to a private client and are therefore appropriately reimbursed as "attorney's fees" under § 1988. However, as has already been discussed, this case could have been handled adequately by local attorneys. The Tenth Circuit has explained that it is generally improper to award travel expenses incurred by out-of-state attorneys in traveling to the place of litigation:

> [B]ecause there is no need to employ counsel from outside the area in most cases, we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed. Departure from this rule should be made in unusual cases only.

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983). Plaintiffs' request for travel expenses is therefore denied.

As to the other out-of-pocket expenses amounting to $16,056.80, the court finds that many of these expenses are generally billed to the client. The court further finds that one-half of these expenses were reasonably

**25.** *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (citations omitted).

**26.** Defendants have moved to strike plaintiffs' bill of costs because it was filed so long after the court's deadline. However, the court's disposition of this matter renders defendants' motion moot.

**27.** While there is a presumption in favor of awarding costs, *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir.1987), district courts have been given broad discretion in

this area, and may deny costs outright. *Institutionalized Juveniles v. Secretary of Public Welfare*, 568 F.Supp. 1020, 1035 (E.D.Pa.1983). The rule under § 1988, that courts should award prevailing parties attorney's fees "unless special circumstances render such an award unjust," *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir.1987), does not apply to the taxation of costs. *Johnson v. Nordstrom–Larpenteur Agcy., Inc.*, 623 F.2d 1279, 1282 (8th Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

incurred.[28] This amount is included with plaintiffs' lodestar figure and adjusted to reflect plaintiffs' limited success on the merits. Accordingly, the court adds $2,007.10 in expenses to plaintiffs' attorneys' fee award.

### 2. Defendants' Expenses

Defendants seek reimbursement for $3,120.75 of travel expenses incurred in relation to fighting plaintiffs' Establishment Clause and Free Exercise Clause claims. These travel expenses are normally billed to the client, and, to the extent they relate to the Establishment Clause claims, should be included in defendants' attorneys' fees award. Accordingly, the court awards defendants 50% of these travel expenses, or $1,560.37, as representing the expenses defendants incurred fighting plaintiffs' Establishment Clause claims.[29]

Based upon the foregoing, plaintiffs' application for attorneys' fees in the amount of $700,753.81 [30] is reduced by $629,090.34.[31] Defendants' application for attorneys' fees of $300,000.77 is reduced by $231,135.97.[32]

Accordingly, it is hereby

ORDERED, that plaintiffs whose claims were successfully prosecuted are entitled to an award of $71,663.47 for attorneys' fees in this action; it is

FURTHER ORDERED, that defendants are entitled to an award of $68,957.80 for attorneys' fees in this action, to be paid $53,110.33 by plaintiffs whose claims are declared to be frivolous, and $15,847.47 by plaintiffs' counsel; it is

FURTHER ORDERED, that the parties shall bear their own costs.

IT IS SO ORDERED.

### APPENDIX A—Plaintiffs' Award

| Name | Hours Claimed | Rate Claimed | Hours Allowed | Rate Allowed | Lodestar |
|------|---------------|--------------|---------------|--------------|----------|
| J. Benshoof CRLP | 451.65 | $355 | 301.10 (67%) | $155 | $46,670.50 |
| R. Pine CRLP | 353.10 | $310 | 235.40 (67%) | $125 | $29,425.00 |
| S. Heller CRLP | 117.50 | $285 | 113.50 (97%) | $105 | $11,917.50 |
| E. Goetz CRLP | 67.67 | $235 | 65.50 (97%) | $95 | $ 6,222.50 |
| J. Mertus CRLP | ˜ 600 | $195 | 60.00 (10%) | $95 | $ 5,700.00 |
| L. Lapidus CRLP | 91.00 | $195 | 71.00 (79%) | $85 | $ 6,035.00 |
| D. Bravo CRLP | 632.75 | $125 | 506.20 (80%) | $75 | $37,965.00 |
| C. Albissa CRLP | 167.55 | $155 | 137.55 (92%) | $90 | $12,379.50 |
| A. Dwyer CRLP | 41.65 | $155 | 29.15 (70%) | $85 | $ 2,477.75 |

28. One basis for this reduction is that a large portion of these expenses was undoubtedly incurred as a direct result of plaintiffs' out-of-state counsel having to communicate and interact with local counsel.

29. The court assumes that these travel expenses were divided equally between the Free Exercise and Establishment Clause claims.

30. *See supra* note 18.

31. *See* Appendix A.

32. *See* Appendix B. No doubt the award granted defendants for the work done by defendants' lead counsel, Mary Anne Wood, fails to reflect the dominant and significant role she played in this litigation. Records submitted indicate that most of her time was spent on issues other than the ones for which defendants received attorneys' fees. Her time spent coordinating and working with other counsel on the other issues appears to be understated.

| Name | Hours Claimed | Rate Claimed | Hours Allowed | Rate Allowed | Lodestar |
|---|---|---|---|---|---|
| D. Gans CRLP (paralegal) | 47.55 | $80 | **31.70** (67%) | $55 | $ 1,743.50 |
| R. Evans PPFA | 58.75 | $250 | **25.00** (43%) | $155 | $ 3,875.00 |
| J. McCarroll BKC | 33.70 | $250 | **26.96** (80%) | $130 | $ 3,504.80 |
| E. Gartner BKC | 392.30 | $160 | **360.90** (92%) | $95 | $34,285.50 |
| J. Oritt WOR | 565.05 | $125 | **376.70** (67%) | $125 | $47,087.50 |
| H. Lundgren BL | 266.30 | $125 | **177.50** (67%) | $125 · | $22,187.50 |
| K. Kendell ACLU | 74.00 | $110 | **55.50** (75%) | $90 | $ 4,995.00 |
| M. Martin CRLP | 471.00 | $135 | **314.00** (67%) | $55 | $17,270.00 |

| Name | Lodestar Award | Lodestar Adjustment | Final Fee Award |
|---|---|---|---|
| CRLP | $177,806.25 | −75% | $44,451.56 |
| PPFA | $ 3,875.00 | −75% | $ 968.75 |
| Berle, Kass & Case | $ 37,790.30 | −85% | $ 5,668.55 |
| J. Oritt | $ 47,087.50 | −75% | $11,771.88 |
| H. Lundgren | $ 22,187.50 | −75% | $ 5,546.88 |
| K. Kendell | $ 4,995.00 | −75% | $ 1,248.75 |
| Expenses Awarded | $ 8,028.40 | −75% | $ 2,007.10 |
| Total | $301,769.95 | | $71,663.47 |

\* Normal type—amount requested
\* **Bold type**—amount actually awarded

| Name | Inv. Serv. | Religion Claims | Eq. Prot. | State Const. | Fee App. | Total |
|---|---|---|---|---|---|---|
| P. Durham | $1,123.50 | $16,779 **$7,917** | | | | |
| R. Wilkins | | $587.50 **$293.75** | | $225 **$175** | | |
| L. Hawkins | | $3,500 **$1,750** | | | | |
| C. Durham | | $25,820 **$12,460** | | | | |
| A. Quinn | | $5,265 **$2,632.50** | | $260 **$130** | $1,657.50 **$828.75** | |
| M. Wood | | $1,486.25 **$743.13** | | $2,356.25 **$2,066.25** | $2,392 **$1,196** | |
| K. Balmforth | | $2,167.50 **$1,041.25** | | $7,990 **$7,820** | $4,845 **$2,422.50** | |
| R. Skousen | | $2,351.25 **$1,045** | | $1,567.50 **$1,457.50** | $5,307 **$2,653.50** | |
| K. Patterson | | $357 **$178.50** | | | | |
| J. Bowser | | $495 **$192.50** | | | $1,237.50 **$618.75** | |
| M. Holman | $310 **$103.33** | | | | | |
| M. Kelley | $4,505 **$4,391** | | | | | |
| J. Walker | $190 **$63.33** | | | | | |
| T. Anderson | | $3,380 **$1,625** | $2,892.50 | | | |
| S. Jones | | | | $434 **$341** | | |
| Expenses | | $3,120.75 **$1,560.37** | | | | |
| SJ MOTION | $2,441.70 **$2,390.30** | | $3,052.13 **$2,987.87** | $3,845.68 **$3,764.72** | | |
| **Totals** | 8,570.20 **8,071.46** | 65,309.75 **31,439** | 5,944.63 **5,880.37** | 16,678.43 **15,754.47** | 15,440 **7,719.50** | 111,943 **68,864.80** |

